**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Margarita MARTINEZ DE ORTIZ, Defendant–Appellant.**

**No. 88–1760.**

United States Court of Appeals, Seventh Circuit.

Argued April 17, 1989.

Decided Aug. 16, 1989.

Reargued In Banc May 30, 1990.

Decided July 16, 1990.

Eric J. Klumb, R. Jeffrey Wagner, Asst. U.S. Attys., John E. Fryatt, U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

John Landa, Kenosha, Wis., Andrew Mishlove, Milwaukee, Wis., for defendant-appellant.

David R. Freeman, Federal Public Defender, St. Louis, Mo., Terence MacCarthy, Federal Public Defender, Carol A. Brook, Office of the Federal Public Defender, Chicago, Ill., for Federal Defenders of the Northern, Cent. and Southern Districts of Illinois, amicus curiae.

Before BAUER, Chief Judge, and CUMMINGS, CUDAHY, POSNER, COFFEY, FLAUM, EASTERBROOK, RIPPLE, MANION, and KANNE, Circuit Judges.[*]

EASTERBROOK, Circuit Judge.

We granted rehearing in banc to decide whether a portion of § 5.11 of this circuit's pattern jury instructions, *Federal Criminal Jury Instructions of the Seventh Circuit* § 5.11 (1980), is consistent with Fed.R. Evid. 104 and *Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987). We conclude that it is not.

## I

Kathleen Jaeger set up a purchase of cocaine in order to earn favorable treatment on criminal charges. Jaeger called Linda Cabeza, who had supplied Jaeger's boyfriend with cocaine in the past, and asked to buy more. Cabeza named three

---

[*] Circuit Judge Wood, Jr., did not participate in the consideration or decision of this case.

possible suppliers, including "Margarita". (The Jaeger–Cabeza phone conversations were taped.) In later conversations Cabeza reported that although other leads had fallen through, "Margarita" would supply enough cocaine. Linda Cabeza arranged for the shipment of eight kilograms to Chicago. Linda and "the person I told you I was gonna talk to" would fly from Miami to Chicago as the "guarantee for everything"; Alberto Cabeza, Linda's husband, would follow by car with the cocaine, which was to be transferred to Wisconsin, where Jaeger lived.

Jaeger picked up Linda Cabeza and Margarita Martinez de Ortiz at the airport in Chicago. Conversation was difficult. Martinez speaks no English, Jaeger no Spanish. Cabeza translated. According to Jaeger, the original deal was to "front" five kilograms to Jaeger—that is, supply them against promise of payment from the proceeds of resale—and to sell the other three kilograms in Chicago. Cabeza told Jaeger that she and Martinez were tired and wanted to go to a hotel, where they could rest and arrange for the delivery of another five to ten kilograms of cocaine. At the hotel the three conversed about why Linda Cabeza had turned to Martinez for cocaine. Jaeger testified about Cabeza's translations of Martinez's words and also said that she heard Martinez mention "kilo" and "Lydia" (one of the persons from whom Cabeza had been unable to obtain cocaine). Later that day Jaeger asked Martinez (through Cabeza) whether she could have all eight kilograms. Martinez replied (according to Jaeger's recollection of Cabeza's translation) that she thought Jaeger was nice and could have the entire shipment.

Alberto Cabeza arrived in Chicago late that night. He left three kilograms of cocaine in the hotel safe. Linda, Jaeger, and Martinez drove to Kenosha in one car, Alberto in another. Jaeger alone met Alberto in a parking lot and received five kilograms of cocaine. She was to resell them immediately and receive the remaining three after payment. Neither sale nor payment occurred. Federal agents arrested Alberto and seized the cocaine. Later they arrested Linda and Martinez and re-trieved the other three kilograms from the safe in Chicago. The Cabezas pleaded guilty; Martinez went to trial and was convicted of conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846. She was fined $5,000 and sentenced to ten years' imprisonment. Martinez was acquitted of possessing cocaine with intent to distribute it.

Martinez concedes that a conspiracy to sell cocaine existed; she denies being a member. The evidence does not show that Martinez saw or touched the cocaine in Chicago or Kenosha. Evidence against her consisted of Jaeger's testimony about Linda Cabeza's translations of her words, the snatches of Martinez's own speech (such as "kilo") Jaeger remembers, Linda Cabeza's statements on the phone that she would obtain cocaine from "Margarita", who would come to Chicago, and Martinez's presence during the movements associated with the transfer of drugs. Although the combination of Martinez's presence plus the words Jaeger remembers Martinez uttering might be sufficient to support a conviction, the case is much stronger when combined with the two kinds of hearsay: Linda's words on the phone, and Linda's translations of conversations that discuss drugs.

II

■ Declarations during the course and in furtherance of a conspiracy may be used as evidence. Fed.R.Evid. 801(d)(2)(E); *United States v. Inadi*, 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986); *United States v. Van Daal Wyk*, 840 F.2d 494, 496 (7th Cir.1988). The prosecutor asked the district judge to admit the tapes, plus Jaeger's reports of Linda Cabeza's words, under this co-conspirator exception to the hearsay rule. The district judge concluded that the prosecutor had established the necessary facts by a preponderance of the evidence. See Fed.R.Evid. 104(a); *Bourjaily*, 483 U.S. at 175–76, 107 S.Ct. at 2778–79; *United States v. Santiago*, 582 F.2d 1128 (7th Cir.1978). Rule 104(a) provides:

> Preliminary questions concerning ... the admissibility of evidence shall be de-

termined by the court, subject to the provisions of subdivision (b). In making its determination it is not bound by the rules of evidence except those with respect to privileges.

Rule 104(b) says in turn that whether evidence is relevant sometimes depends on a jury's resolution of factual disputes. Co-conspirator declarations are *admissible* if the judge concludes by a preponderance of the evidence that the defendant was a member of a conspiracy, and that the words were uttered during the course and in furtherance of the objectives of the conspiracy. Under *Bourjaily* and Rule 104(a) admissibility is a question for the judge. Whether statements are *relevant* to particular issues is a distinct question. Rule 104(b) reads:

When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.

The Advisory Committee's notes make clear that making the "finding" about the condition is the responsibility of the trier of fact—in this case, the jury. See also, e.g., Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5054 (1977). If evidence is both admissible and relevant, there is of course a third question: whether it is sufficient to support a verdict. Nothing we say in this opinion addresses the question whether hearsay alone is sufficient to support a verdict of guilt. We are concerned with the second step, relevance. And relevance must be decomposed into two components: absolute relevance, governed by Fed.R. Evid. 401, and conditional relevance, governed by Rule 104(b).

When the evidence is a co-conspirator's declaration, it is difficult to distinguish the admissibility decision from the relevance decision. Both depend on a finding that the accused was a member of the conspiracy. We know from *Bourjaily* and Rule 104(a) that the judge may consider hearsay when deciding whether the accused belonged to a conspiracy, and whether the declarations meet the other conditions for admission. The question before us is when, and for what purposes, the jury may consider the declarations so admitted.

On this question, the district judge gave confusing advice. The judge told the jury:

In determining whether the alleged conspiracy existed, and whether a particular defendant became a member of the conspiracy, you may consider the actions and statements of all the alleged participants. The agreement may be inferred from all the circumstances and the conduct of all the alleged participants.

.     .     .     .     .

... In determining whether the defendant became a member of the conspiracy, you may consider only the acts and statements of that particular defendant.

The first of these paragraphs says that when deciding whether a conspiracy existed and Martinez joined it, the jury may consider all of the evidence the judge admitted—including evidence that would be inadmissible hearsay but for the judge's decision under Rule 104(a). The second paragraph, limiting consideration to the "acts and statements of that particular defendant", may be understood as contradicting the first, as meaning that only direct evidence of Martinez's acts or out of Martinez's mouth may be used to decide whether Martinez joined the conspiracy. This is the traditional understanding of this excerpt from pattern jury instruction § 5.11, and the most natural one for a jury. So read, the instructions conflict. If the second paragraph is required by Rule 104(b) or 401, or the substantive law of conspiracy, the verdict is in jeopardy because the force of this instruction was sapped by the first paragraph.

Neither the rules nor *Bourjaily* specify the use the jury may make of the evidence. What Rule 104(a) and *Bourjaily* do establish is that the jury does not decide the hearsay question. The question for the jury is one of the substantive law of conspiracy. Conspirators, like partners, are mutual agents. Declarations by others count against the accused only if the accused has joined the conspiracy personally.

Linda Cabeza could not draft Martinez into a conspiracy; Martinez had to enlist. Unless her words and deeds place her among the conspirators, other persons' statements are (substantively) irrelevant.

■ Let us begin, then, with the relevance question under Rule 401. Should the jury be told that declarations are irrelevant, and therefore not to be considered at all, until it has first determined on the basis of direct evidence that the accused joined the conspiracy? We join Learned Hand, *United States v. Dennis*, 183 F.2d 201, 230–31 (2d Cir.1950), affirmed, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951), in concluding that the answer is "no". Words of others may be relevant to the question whether the accused joined. Juries routinely use evidence *of* the defendant's acts that is not *from* the defendant. Whether Perkins robbed a bank may be established by what other persons say about him—his whereabouts, acts, possession of the booty. Juries convict people based entirely on what others say about his acts (was defendant present at the sale of the drugs?, etc.). Whether Perkins joined a conspiracy also may be established by what others say he said. If B told C something like: "I just received a phone call from A, who said that he would bring the cocaine to the meeting point at 10:00 tonight", that is both admissible against A (on the basis of the judge's preliminary determination that A is a member of the conspiracy) and relevant—because it describes something A did to participate in the conspiracy. There may be obstacles to the use of the evidence (hearsay first among them), but there can be no doubt that we regularly prove A's guilt out of B's mouth. The same principle applies in conspiracy cases, once the judge's finding by a preponderance of the evidence under Rule 104(a) removes the hearsay objection.

Hearsay meets the Rule 401 standards of relevance—it may "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Declarations make more likely the proposition (membership) the prosecutor seeks to establish. *Bourjaily* said that "there is little doubt that a co-conspirator's statements could themselves be probative of the existence of a conspiracy and the participation of both the defendant and the declarant in the conspiracy." 483 U.S. at 180, 107 S.Ct. at 2781. The customary problem with hearsay is not irrelevance but excessive persuasive force; jurors may think the evidence more reliable than it is and so rely too heavily on it. That is a serious risk, but the safeguard is the judge's preliminary decision under Rule 104(a). Declarations collectively may be sufficient to establish that the accused joined the venture even though no snippet of hearsay may be enough, standing alone. "[I]ndividual pieces of evidence, insufficient in themselves to prove a point, may in cumulation prove it.... [A] piece of evidence, unreliable in isolation, may become quite probative when corroborated by other evidence." *Bourjaily*, 483 U.S. at 179–80, 107 S.Ct. at 2781. This case illustrates the point. Linda Cabeza's taped reference to a "Margarita" as her source of cocaine is a slim basis for concluding that Margarita Martinez de Ortiz joined a conspiracy—until Martinez shows up in Chicago, in Linda's company, talking about "kilos".

Since Rule 104 was adopted, at least two courts of appeals have held that a conspirator's declarations may be evidence of the defendant's participation. *United States v. Treadwell*, 760 F.2d 327, 337–38 (D.C.Cir. 1985); *United States v. Giese*, 597 F.2d 1170, 1197–98 (9th Cir.1979). We agree with them. Other circuits allow the judge to admit the evidence without any further explanation to the jury about its use. E.g., *United States v. Boling*, 869 F.2d 965, 973–74 (6th Cir.1989); *United States v. Elam*, 678 F.2d 1234, 1249 (5th Cir.1982). Every court that has considered the question after the adoption of Rule 104 has concluded that the judge's decision is conclusive—that the jury may not re-examine the question whether there is "enough" evidence of the defendant's participation to allow the hearsay to be used. E.g., *United States v. Petrozziello*, 548 F.2d 20, 23 (1st Cir.1977); *United States v. Stanchich*, 550 F.2d 1294 (2d Cir.1977) (Friendly, J.); *Unit-*

*ed States v. Enright,* 579 F.2d 980, 986–87 (6th Cir.1978); *United States v. Macklin,* 573 F.2d 1046 (8th Cir.1978); *United States v. Gantt,* 617 F.2d 831, 845–46 (D.C.Cir. 1980). We are among them, see *Santiago,* 582 F.2d at 1132. This conclusion is logically inconsistent with an instruction such as § 5.11 that allows the jury to second-guess the decision to admit the evidence. For many years no appellate court has held that the jury should be told that when deciding whether an accused joined the conspiracy it may consider "only the acts and statements" of that defendant.**

■ Our pattern instruction is not based on a belief that hearsay is irrelevant. It is instead a variant of the antibootstrapping rule—the principle that the hearsay declarations sought to be introduced may not also be used to establish the existence of the conspiracy on which their admissibility depends. The advisory committee that drafted § 5.11 explained that it inserted the paragraph because it disagreed with holdings in other circuits allowing a co-conspirator's statements to "be considered in determining membership of the defendant." *Federal Criminal Jury Instructions of the Seventh Circuit* 75 (1980). The committee relied on *Glasser v. United States,* 315 U.S. 60, 74–75, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942), the principal anti-bootstrapping case, and on Jack B. Weinstein & Margaret A. Berger, 1 *Weinstein's Evidence* ¶ 104[05] (1979), which concluded that the no-bootstrapping rule survived Rule 104(a). *Bourjaily* holds that it did not survive, 483 U.S. at 176–81, 107 S.Ct. at 2779–82, and that the admission of declarations does not violate the Confrontation Clause even if hearsay supplies part of the foundation for the conclusion that the accused belonged to the conspiracy, *id.* at

181–84, 107 S.Ct. at 2781–84. This decision removes the foundation for our pattern instruction. Today the admissibility of conspirators' declarations is not contingent on demonstrating by nonhearsay evidence either the conspiracy or a given defendant's participation. The judge admits the statements; the jury considers them. A judge won't let statements in unless he is satisfied that the accused joined the conspiracy, but *Bourjaily* says that he may reach the necessary level of satisfaction at least in part on the basis of the hearsay.

The Federal Judicial Center's recommended conspiracy instruction, *Pattern Criminal Jury Instructions* 76–77 (1987), omits any advice comparable to the language from our § 5.11. The commentary to the FJC's instructions, *id.* at 77–78 explains:

> Formerly, conspiracy instructions advised jurors that they could consider only the acts and statements of each individual conspirator. This statement made sense when the jurisprudence permitted a jury to consider the admissibility of coconspirator acts and declarations. [Citation omitted.] Today, however, most courts find that the trial judge determines whether sufficient independent evidence has been offered to show that a statement was made by a conspirator during the course and in furtherance of the conspiracy. *See* Fed.R.Evid. 104, 801(d)(2)(E). At that point the jurors can consider all such statements and circumstantial evidence against the defendant. [Citation omitted.]

*Bourjaily,* decided shortly after the publication of the FJC's pattern instructions, confirms this assessment of the law.

Once the judge rules (for purposes of admissibility) that A is a member, the jury

---

** Our order setting the case for rehearing in banc invited the federal defenders of the circuit to file a brief as amici curiae. 897 F.2d 220 (7th Cir.1990). The defenders' helpful brief draws our attention to numerous decisions that have approved instructions similar to the last sentence of our pattern § 5.11. All of these cases dispose of arguments by the defendants that the instructions are too favorable to the prosecution; they hold that instructions of this kind adequately protect defendants' rights. E.g.,

*United States v. Angiulo,* 897 F.2d 1169, 1202 (1st Cir.1990); *United States v. Tarantino,* 846 F.2d 1384, 1401 (D.C.Cir.1988); *United States v. Shigemura,* 682 F.2d 699, 705 (8th Cir.1982). We agree with this conclusion, which is not inconsistent with our holding that although a defendant's membership depends on his own words and deeds, declarations admitted in accord with Rule 104(a) and *Bourjaily* may be employed to show what those words and deeds were.

may consider the evidence for the purpose of determining whether A committed the crime of conspiracy. Rule 104(b) imposes a second step when the declarations are conditionally relevant. The paradigm of conditional relevance in a conspiracy case is vicarious liability. Evidence that Alberto Cabeza possessed eight kilograms of cocaine with intent to distribute them to Jaeger is relevant evidence against Martinez, provided she joined the conspiracy. If she did, then she is vicariously liable for other crimes within the scope of the agreement. *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). The jury could use evidence of Alberto's possession to decide whether Martinez committed the crime of possession with intent to distribute (with which she was charged), only after deciding that Martinez was a conspirator. If she was, the condition making the evidence relevant to the charge of possession has been satisfied. Rule 104(b) gives the jury this role without giving it the broader role implied by our instruction § 5.11.

A judge ought to help the jury understand the difference between the use of the evidence to decide whether the accused joined and the conditional relevance of the evidence for other purposes. Because as a matter of substantive law membership in the conspiracy depends on the accused's own acts and words, the judge also should help the jury to understand that the hearsay may be used initially only to show what the accused did or said, or to help the jury understand the significance of ambiguous acts or words. An instruction such as this would suffice:

> During the trial you heard about statements made by persons who the prosecutor says are the defendant's fellow conspirators. You may consider these statements when you decide whether the defendant joined the conspiracy. Please remember, however, that only the defendant's own words and acts show whether he joined. You therefore should use statements by other persons to decide what the defendant did and said, or to help you understand the defendant's acts and words. If you decide that the defendant joined the conspiracy, you may use the statements by other persons in order to decide questions that are pertinent to the other accusations against him.

We do not require district judges to use this language, which may be inappropriate for a particular situation. We offer it only as an illustration.

Any confusion engendered by the instructions given in this case could not have worked to Martinez's detriment. The sentence from pattern instruction § 5.11 favors the accused. Although the general instruction allowing the jury to use the evidence did not ask it to distinguish between the initial decision whether Martinez joined the conspiracy and subsequent decisions concerning liability for acts committed by co-conspirators, the jury did not convict Martinez on the basis of Linda or Alberto Cabeza's acts. It acquitted Martinez of possessing cocaine with intent to distribute it.

### III

Two questions remain. Martinez contends that the judge erred in admitting the declarations in the first place, and that the evidence is insufficient even when Linda Cabeza's statements are taken into account. Neither argument is persuasive. When deciding whether to admit the declarations, the district judge considered direct evidence (Martinez's presence in Chicago and Kenosha in the company of other participants), Martinez's admissions (her use of the word "kilo" and her mention of "Lydia", both of which come in under Fed. R.Evid. 801(d)(2)(A)), and Linda Cabeza's statements. *Bourjaily* holds that Rule 104(a) abolished the anti-bootstrapping rule, and the evidence comfortably satisfies the preponderance standard under Rule 104(a).

Evidence of this calibre also is enough to allow a rational juror to conclude beyond a reasonable doubt that Martinez joined the conspiracy. *Glasser*, 315 U.S. at 80, 62 S.Ct. at 469–70; see also *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Although until recently this

circuit frequently asked whether "slight" evidence connected the defendant to the conspiracy, *United States v. Durrive*, 902 F.2d 1221, 1225–29 (7th Cir.1990), makes it clear that the evidence must be "substantial". See also *Hamling v. United States*, 418 U.S. 87, 124, 94 S.Ct. 2887, 2911, 41 L.Ed.2d 590 (1974); *Burks v. United States*, 437 U.S. 1, 17, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978). The difference between "slight" and "substantial" does not matter to this case. A rational juror could conclude beyond a reasonable doubt that Martinez agreed to furnish the cocaine to Linda Cabeza's customer, had Alberto Cabeza ferry it north, and flew to Chicago to ensure that all went according to plan. Martinez's ability to change the deal from five kilograms to all eight demonstrates her participation in the venture, if not control of it.

■ The jury's decision to acquit Martinez on the charge of possession is inconsistent with its decision to convict her of conspiracy, given the definition of constructive possession and each conspirator's responsibility for crimes committed by other members within the scope of the agreement. Yet inconsistent verdicts do not imply that the jury must have been confused, or must have had a reasonable doubt. *United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984). Conflict may show no more than that the jury was lenient. Martinez had a fair trial, and as the only error worked in her favor, the judgment is

AFFIRMED.

BAUER, Chief Judge, with whom CUDAHY and FLAUM, Circuit Judges, join, concurring in the result but dissenting in part.

I have no problem with the affirmance of the conviction in this case; my only quarrel is with the decision not to include as part of the conspiracy instruction delivered to the jury, the language of *Federal Criminal Jury Instructions* of the Seventh Circuit § 5.11, which reads:

In determining whether the defendant became a member of the conspiracy you may consider only the acts and doings of that particular defendant.[1]

It is very difficult to argue with the careful and logical opinion of Judge Easterbrook. *Bourjaily* does hold that the antiboot strapping rule is abolished and, as this court did in *Santiago*, confirmed that the admissibility of a co-conspirator's statement was solely a matter for the trial judge. That is not, it seems to me, the question.

The question is whether a finding of guilty of the crime of participating in a criminal conspiracy can be predicated entirely on the out-of-court statements of alleged co-conspirators. If so, then the confrontation clause of the Constitution has been fairly well dented.

1. The entire instruction reads as follows:

5.11 CONSPIRACY

In order to establish the offense of conspiracy, the government must prove these elements beyond a reasonable doubt:

1. that the alleged conspiracy existed, and
[2. that an overt act was committed in furtherance of the conspiracy, and]
3. that the defendant knowingly and intentionally became a member of the conspiracy.

A conspiracy is a combination of two or more persons to accomplish an unlawful purpose. A conspiracy may be established even if its purpose was not accomplished.

In determining whether the alleged conspiracy existed, you may consider the actions and statements of all the alleged participants. The agreement may be inferred from all the circumstances and the conduct of all the alleged participants.

[A conspiracy is not proved unless the evidence establishes that at least one overt act was committed by at least one conspirator to further the purpose of the conspiracy. It is not necessary that all the overt acts charged in the indictment be proved, and the overt act proved may itself be a lawful act.]

In determining whether the defendant became a member of the conspiracy you may consider only the acts and statements of that particular defendant.

To be a member of the conspiracy, the defendant need not join at the beginning or know all the other members or the means by which the purpose was to be accomplished. The government must prove beyond a reasonable doubt, from the defendant's own acts and statements, that he was aware of the common purpose and was a willing participant.

The majority opinion says correctly that people are constantly convicted on the say-so of others. Short of a plea of guilty or an in-court confession, I believe that all convicted defendants are convicted on other people's say-so. What the Seventh Circuit Pattern Instruction Committee sought was to face the confrontation clause of the Constitution and reconcile it with the rule 401.

At least this writer has no quarrel with the rule that says that statements of a co-conspirator are not hearsay. The rule is based on a logical series of thoughts: criminal conspiracies are business arrangements; the object of the "business" may be illegal, but its formation and growth is very like the formation and growth of a corporation (absent stock issuances) or a joint-venture or a multi-faceted partnership. And, as in a business arrangement, the partnership or corporation operates through agents. And these agents, acting within the scope of the agency agreement, have the power to bind the "company" or the partners of the agent. The acts and statements of the agent, made within its general terms, to further the business reason for the agency, *are* the acts and statements of the principal as well. And each partner in the business is the agent of all other partners with the same power to bind and make liable his co-partners (and fellow agents).

Having borrowed this much from the business law world, we must borrow it all; the agency *cannot* be proved only by the acts or declarations of the agents, but must be proved independently of the agent, either by written terms of the agency, the delivery of an indicia of agency by the principal to the agent, or by some affirmative act or statement (including ratification by accepting the benefits) of the principal which, in effect, acknowledges the agency relation. That is all the paragraph of the Pattern Instruction does: it calls the jury's attention to the requirement that the principal-agent relationship must be demonstrated by some act or doing of the principal who is to be held accountable.

The majority opinion says just that: "Conspirators, like partners, are mutual agents. Declarations by others count against the accused only if the accused has joined the conspiracy personally. Linda Cabeza could not draft Martinez into a conspiracy; Martinez had to enlist. Unless her words and deeds place her among the conspirators, other persons' statements are (substantively) irrelevant." But this statement, unless conveyed to the jury in some form, means little. The reason for *any* instruction to the jury is to tell them what the law, applicable to the case at bar, is. And that, it seems to me, is what the paragraph being stricken does.

The quote from *Bourjaily*—"... There is little doubt that a co-conspirator's statements could themselves be probative of the existence of a conspiracy and the participation of both the defendant and the declarant in the conspiracy."—is both accurate and frightening. It is precisely the problem: the participation of an alleged co-conspirator should *not* be provable *only* by the statements of a co-conspirator unless the speaker is a witness in court subject to confrontation and cross-examination.

Nor do I find much comfort in the statement of the majority opinion that says, "Declarations collectively may be sufficient to establish that the accused joined in the venture even though no snippet of hearsay may be enough, standing alone." So that Linda's taped statement about Martinez's participatory role in the scheme here involved is given status as an admissible statement of a co-conspirator by Martinez who "shows up in Linda's company talking about kilos." Indeed it does, but it is the act and statement of the accused, not an out-of-court declaration by a third party.[2] The participation of Martinez is shown by "her acts and statements" as the heretofore approved instruction required.

The opinion then proposes an instruction which "would suffice" (although "not re-

---

**2.** Kathleen Jaeger, a government witness, testified that she was present with Ms. Cabeza and the defendant Martinez de Ortiz and that she, Jaeger, heard the defendant Martinez speak of "Lydia" and "kilos."

quired"). In plain language, the instruction tells the jury that they have "heard about statements made by persons who the prosecutor says are the defendant's fellow conspirators. You may consider these statements when you decide whether the defendant joined the conspiracy. Please remember, however, that only the defendant's own words and acts show whether he joined. You therefore should use statements by other persons to decide what the defendant did and said, or to help you understand the defendant's acts and words."

What it provides is that the judge can find the status of the accused as a co-conspirator by considering the out-of-court statements of an admitted co-conspirator. He then tells the jury that they may consider these statements "when you decide whether the defendant joined the conspiracy." So if a live government witness testifies that he arranged with A to buy cocaine that A says he owns jointly with C and B, and the same government witness says that B delivered the cocaine and said he got it from C, A, B, *and* C can all be convicted of conspiracy to sell cocaine although not one single witness has taken the stand to say he or she ever saw or talked with C. The opinion and instruction proposed as a model makes this result legal and proper. I cannot believe that this satisfies the confrontation clause of our Constitution or any concept of a fair trial.

Nor do I understand that out-of-court statements are made more persuasive or reliable because they are made by persons "who the prosecutor says are the defendant's fellow conspirators."

In short, by making the statements of co-conspirators the predicates for their own admissibility and then making them the basis for a conviction of someone not a party to the statements, the Constitution and my concept of a fair trial are grossly offended. Instruction 5.11 should be left intact.

CUDAHY, Circuit Judge, concurring in the result:

Although I am pleased to join the separate opinion of Chief Judge Bauer, I think there is considerable merit to the majority opinion as well. I agree that *Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987), permits the jury to consider as relevant declarations made by a co-conspirator alleging a defendant's membership in a conspiracy. But I do not understand the majority's reluctance to decide the obvious in its otherwise comprehensive opinion: namely, whether such a statement made by a co-conspirator can, *by itself,* be sufficient to support a conviction for conspiracy. Chief Judge Bauer wrestles with this crucial question in his concurrence, but the majority seems content to reserve it for a later date—"[n]othing we say in this opinion addresses the question whether hearsay alone is sufficient to support a verdict of guilt," Majority Opinion at 632 —instead of facing up to it now. Unless the question is answered, the majority opinion remains dangerously unfinished.

The Assistant United States Attorney arguing this case showed no similar hesitancy. When asked at oral argument whether hearsay alone would be sufficient to support a conviction in a particular case, he responded unequivocally:

> If I were a prosecutor, I wouldn't give it to the grand jury. If I was a grand juror, I wouldn't indict it. If I were a district court judge, I'd grant the Rule 29 motion [for judgment of acquittal]. If I were a juror, I would vote to acquit, and if I was a member of this court, I'd vote to reverse for sufficiency.

Certainly, we do not fashion our rules of law from the representations of one prosecutor. Yet his view has a lot to recommend it. First, as the Supreme Court recognizes in *Bourjaily*, a co-conspirator's out of court statement is presumed to be unreliable, but this presumption may be rebutted "by appropriate proof. See Fed.Rule Evid. 803(24) (otherwise inadmissible hearsay may be admitted if circumstantial guarantees of trustworthiness demonstrated)." *Bourjaily*, 483 U.S. at 179, 107 S.Ct. at 2781. Should the prosecution fail to produce any evidence rebutting the presumption of unreliability, there will be no "ap-

propriate proof"; the out of court state-ment, therefore, cannot become sufficiently reliable to support a conspiracy conviction. Second, the Court notes in *Bourjaily* that a co-conspirator's statement, "unreliable in isolation, may become quite probative when corroborated by other evidence." *Id.* at 180, 107 S.Ct. at 2781. Again, if there is no other evidence, all that remains is one piece of inadmissible, unreliable evidence, which is insufficient to support a conviction.

The majority does not require district judges to parrot the language of its newly-created instruction. When fashioning their own versions of this instruction, I believe that district judges should advise juries that, without more, a co-conspirator's state-ment *by itself* is inherently unreliable and insufficient to support a conviction for con-spiracy.