**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**David ROMO, Jr., Ann Romo, Juanita Romo, Defendants–Appellants.**

**Nos. 89–3012, 89–3049, and 89–3156.**

United States Court of Appeals,
Seventh Circuit.

Argued May 8, 1990.
Decided Sept. 27, 1990.

890

R. Jeffrey Wagner, Asst. U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

William S. Mautner, Atinsky, Kahn, Sicula & Teper, Milwaukee, Wis., for David Romo, Jr.

Mark A. Pumpian, Styles & Pumpian, Milwaukee, Wis., for Ann Romo.

Thomas Nelson, Milwaukee, Wis., for Juanita Romo.

Before BAUER, Chief Judge, MANION, Circuit Judge, and ESCHBACH, Senior Circuit Judge.

MANION, Circuit Judge.

Defendants-appellants David Romo, Jr., Ann Romo, and Juanita Romo were convicted of conspiracy to possess cocaine with intent to distribute, and Ann and Juanita were convicted of various substantive offenses of cocaine distribution.[1] David, Jr. and Ann were sentenced to 120 months imprisonment and five years of supervised release, and Juanita to 121 months imprisonment and five years supervised release. Defendants challenge their convictions on appeal; additionally, David, Jr. and Ann challenge their sentences. For the reasons set forth below, we affirm the convictions and sentences.

I.

In early 1988, Milwaukee police officers executed a search warrant at a tavern and the apartment above the tavern, in which David, Jr. lived. David Jr. was apparently in the process of purchasing the tavern from his father, David Romo, Sr. As a result of the search, they found a small amount of cocaine (.7 grams) in the apartment, and nine small packages of cocaine (totalling 7.1 grams) in the tavern. On July 8, 1988, a West Allis, Wisconsin Police Department undercover officer purchased three ounces of cocaine from Ricardo Reyes.[2] The testimony at trial revealed that Reyes had purchased cocaine from Juanita Romo approximately 30 times during 1988; during several of these transactions, Reyes and Juanita would travel to David Romo, Sr.'s residence to pick up the cocaine. During the July 8 transaction, the officer met Reyes at Reyes' home, along with Juanita, Manuel Alarcon, and another woman. Juanita then left to pick up the cocaine, and was followed by another offi-

---

1. David, Jr. is the son of David Romo, Sr., Ann is the sister of David, Sr., and Juanita is the sister-in-law of David, Sr.

2. Several other drug transactions were completed between undercover officers and members of the Romo family during the summer of 1988, and police searches produced cocaine and drug paraphernalia; however, only those instances directly relevant to this appeal will be repeated here.

cer to Ann's residence. Juanita returned to Reyes' apartment and sold the officer three ounces of cocaine.

Testimony at trial also revealed that during this summer two people parked in front of the tavern and waited half an hour for David, Jr., who eventually came out and gave one of them a baggie with about one ounce of "white powder," stating that his father had told him to give it to them. A woman who stored cocaine for David, Sr. testified that on two occasions she delivered one ounce of cocaine to David, Jr., and on three occasions delivered cocaine to Juanita. She also testified that David, Sr. told her that whenever he was out of town she was to "take orders from David, Jr." for the cocaine business. Reynaldo Rosalez, who was storing and distributing cocaine for David, Sr., testified that he delivered cocaine to Juanita approximately six times, and to David, Jr. one time.

After being arrested in the fall of 1988, Ricardo Reyes decided to cooperate with the police. He arranged for an undercover officer to purchase an ounce of cocaine from Juanita, and to make two two-ounce and one three-ounce purchases from Ann. Reyes also testified that on one occasion Juanita gave him 1/16 of an ounce of cocaine to deliver, and that David, Jr. went with him, although they were unable to locate the buyer. After the arrest and cooperation of Angelo Rosalez, who was also involved in these drug transactions, the police conducted a search of Ann's apartment and found a loaded handgun and a triple-beam scale. Officers soon after searched Juanita's apartment and found numerous drug notes and needles.

## II.   Jury Instructions

### A.   Conspiracy instruction

■ All three defendants challenge the conspiracy instruction given by the district court. The instruction given by Judge Warren deleted the following paragraph from the Seventh Circuit Model Federal Jury Instructions:

> In determining whether the defendant became a member of the conspiracy, you may consider only the acts and statements of that particular defendant.

Defendants claim that failure to give this part of the instruction constitutes reversible error because it not only allowed the jury to determine whether a conspiracy existed, but also whether a defendant was a member. Very recently this court considered this precise question and rejected a similar claim. In *United States v. de Ortiz*, 907 F.2d 629 (7th Cir.1990) (*en banc*), we held that the Seventh Circuit Instruction is inconsistent with Fed.R.Evid. 104 and *Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987). "[T]he admission of declarations does not violate the Confrontation Clause even if hearsay supplies part of the foundation for the conclusion that the accused belonged to the conspiracy...." *de Ortiz*, 907 F.2d at 634. Given the decision in *de Ortiz*, the failure to give the instruction here was not error.

### B.   Missing witness instruction

■ Juanita challenges the district court's refusal to give a missing witness instruction regarding the government's failure to call as a witness her former boyfriend-turned-government-informant, Manuel Alarcon. To be entitled to such an instruction, a defendant must show two things. First, the absent witness must be peculiarly within the power of the government to produce. *U.S. v. Rollins*, 862 F.2d 1282, 1297 (7th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 2084, 104 L.Ed.2d 648 (1989); *U.S. v. Mahone*, 537 F.2d 922, 926 (7th Cir.), *cert. denied*, 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627 (1976). Second, the missing witness' testimony must be such that it would "elucidate issues in the case" and not be irrelevant or merely cumulative. *Rollins*, 862 F.2d at 1298.

■ Even assuming Alarcon's testimony would have elucidated issues in the case, Juanita was not entitled to the instruction because she has failed to meet the first requirement. A defendant can show that the witness is peculiarly within the power of the government "by showing that the witness is only physically available to the" government or "that because of the

witness' relationship with the [government], his ... testimony is, in pragmatic terms, only available to the other side." *Rollins*, 862 F.2d at 1297. Juanita does not dispute that Alarcon was "physically" available to both sides here. However, she incorrectly concludes that the fact that Alarcon had acted as a government informant meant that it was not within her control to obtain him as a witness. We have held that a witness' status as a government informant does not necessarily "establish that he was pragmatically available to testify only on behalf of the prosecution." *Id.* at 1298. Where defense counsel chooses not to call a witness, the district court's refusal to give the missing witness instruction is not error. *Id.* Juanita's counsel failed to subpoena Alarcon, to attempt to interview him, or to request that the government produce him as a witness or help in doing so. In fact, Juanita states in her brief that the government offered "to arrange" to produce Alarcon as a defense witness. Juanita therefore was not entitled to the missing witness instruction. This lack of unusual government control over Alarcon also justified the court's refusal to allow Juanita's counsel to comment upon Alarcon's absence from the trial. *U.S. v. Keplinger*, 776 F.2d 678, 702–03 (7th Cir.1985), *cert. denied*, 476 U.S. 1183, 106 S.Ct. 2919, 91 L.Ed.2d 548 (1986) ("where the witness appears to be equally available or unavailable to both sides, we think it is well within the district court's discretion to refuse to allow such argument.") *Id.* at 703; *see also U.S. v. Carroll*, 871 F.2d 689, 692 (7th Cir.1989).

### C. *Entrapment instruction*

■ Juanita claims the court erred in failing to give the jury an entrapment instruction as a theory of her defense. A defendant is entitled to a theory-of-defense instruction if (1) the instruction correctly states the law, (2) the theory is supported by the evidence, (3) the defense is not part of the charge, and (4) the failure to include the instruction would result in an unfair trial. *United States v. Marren*, 890 F.2d 924, 929 (7th Cir.1989); *United States v. Douglas*, 818 F.2d 1317, 1320–21 (7th Cir.

1987). The evidence presented by the defendant "must demonstrate that there was sufficient evidence for a reasonable jury to find that the government induced her to commit the crime and that she was not predisposed to engage in the criminal conduct." *United States v. Molinaro*, 877 F.2d 1341, 1349 (7th Cir.1989). We make a *de novo* determination as to whether the defendant presented sufficient evidence for a reasonable jury to find a lack of predisposition and government inducement. *Marren*, 890 F.2d at 930. A defendant can claim entitlement to an entrapment defense while denying commission of the crime. *Mathews v. U.S.*, 485 U.S. 58, 62, 108 S.Ct. 883, 886, 99 L.Ed.2d 54 (1988) ("even if the defendant denies one or more elements of the crime, he is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment.").

■ The government argues that the entrapment defense was not supported by the evidence. We agree. Juanita clearly failed to present sufficient evidence of lack of predisposition on her part to engage in cocaine transactions. Although she had no prior convictions, the government presented evidence that she had sold cocaine to Ricardo Reyes on approximately 30 prior occasions, ranging from ¼ of a gram to ¼ of a pound. A search of Juanita's residence had revealed numerous drug notes and needles. Angelo Rosalez testified that the name "Juane" in his drug notes referred to Juanita, and that he delivered cocaine to Juanita on three occasions. Juanita claims that a jury issue was created on the predisposition issue by her testimony that she had never used or sold drugs and that she at first resisted Reyes' attempts to have her help set up the cocaine transaction with the undercover officer. However, Juanita presented no evidence of such reluctance, and her self-serving testimony is insufficient given the evidence of predisposition presented by the government. *United States v. Shukitis*, 877 F.2d 1322, 1331 (7th Cir.1989). Juanita therefore failed to show a lack of a predisposition to deal in cocaine.

We also believe Juanita failed to present evidence of government inducement. "Mere solicitation" by a government agent does not establish entrapment. *Shukitis*, 877 F.2d at 1331 (quoting *United States v. Perez–Leon*, 757 F.2d 866, 872 (7th Cir.), *cert. denied*, 474 U.S. 831, 106 S.Ct. 99, 88 L.Ed.2d 80 (1985)). Juanita claims that the fact that her boyfriend became a government informant and introduced her to the undercover officer who bought the cocaine and then made the arrest shows undue inducement on the part of the government. We disagree. The government's use of an informant that is particularly close to the defendant, without more, does not show the type of overzealous government persuasion necessary to establish entrapment. *Cf. United States v. Miller*, 891 F.2d 1265 (7th Cir.1989) (government's hiring of defendant's former girlfriend as an informant was not outrageous conduct sufficient to violate defendant's due process rights and thus overturn defendant's conviction for cocaine possession).

### D. Special verdict on amount of cocaine

Juanita and David, Jr. argue that the special verdict form that went to the jury improperly requested that the jury determine what amount of cocaine was the "object" of the conspiracy, and rather should have asked what amount of cocaine the defendants "possessed." They argue that the use of the word "object" is ambiguous and could include all contemplated or desired amounts. Defendants also argue that the court should have given the jury three gradations of quantity to choose from (5 kilograms or more, 500 grams to 5 kilograms, or less than 500 grams) rather than two choices (5 kilograms or more, or 5 kilograms or less), claiming that the jury might then have chosen the "middle" position as a compromise position.

We reject defendants' argument that the form and language of the special verdict requires reversal. The sentencing court rather than the trial jury determines the amount of drugs involved in an offense for purposes of determining which enhanced sentencing provision of § 841(b) is applicable. *United States v. Ocampo*, 890 F.2d 1363, 1372 (7th Cir.1989). Section 841(b) is an enhanced penalty provision rather than a separate substantive offense. *Id.* A district judge can completely reject a defendant's proposed special verdict, because the determination is one for the judge and not the jury. *United States v. Sababu*, 891 F.2d 1308, 1325 (7th Cir.1989); *Ocampo*, 890 F.2d at 1372. The judge can, however, give the jury a special verdict and consider its answer as an aid to making his independent determination. *United States v. McNeese*, 901 F.2d 585 (7th Cir.1990) ("jury's special verdict may be a source of guidance in the determination of the sentence." *Id.* at 605.). Thus, since the jury's answers are not binding on the judge, defendants are not entitled to particular phrasing in the special verdict form, and we believe are not prejudiced by the court's *consideration* of the answers given by the jury. At any rate, the phrasing regarding the "object" of the conspiracy was not ambiguous in light of the crime charged in the indictment, which was conspiracy "to *possess* with intent to *distribute* in excess of five kilograms of cocaine." (emphasis added). Further, defendants' argument that the jury probably would have returned a different finding on the amount of drugs involved had it been given three rather than two levels of gradations from which to choose is pure and unsupported speculation.

### III. Evidentiary Rulings

### A. Exclusion of officer's statement as hearsay

David, Jr., Ann and Juanita claim that the district court erred in sustaining a hearsay objection to testimony they attempted to elicit on the cross-examination of Officer Thomas Baker. Baker had testified about a case report he prepared on Angelo Rosalez, a government informant and witness at trial. Defense counsel asked Baker to read an entry in the report which stated that Rosalez "deals in stolen property." In response to the government's objection, the district judge ruled

that Fed.R.Evid. 803(8)(C) did not apply here for either of two reasons: (1) the use of the report was not strictly against the government, or (2) the circumstances of the report and the statement indicated a lack of trustworthiness. Defendants claim the statement was admissible as an exception to hearsay under Rule 803(8)(C) (official reports) or Rule 803(24) (other exceptions).

Rule 803(8)(C) allows the admission of hearsay consisting of

> [r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth ... against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate a lack of trustworthiness.

The government argues that the statement that Rosalez deals in stolen property was a conclusion rather than a factual finding and therefore does not fall within the ambit of Rule 803(8)(C). The Supreme Court has rejected this argument. *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 109 S.Ct. 439, 450, 102 L.Ed.2d 445 (1988) ("portions of investigatory reports otherwise admissible under Rule 803(8)(C) are not inadmissible merely because they state a conclusion or opinion."). However, the government also argues that the district court was correct in finding indications of untrustworthiness that were not adequately addressed by defense counsel. We agree. "[A] trial judge has the discretion, and indeed the obligation, to exclude an entire report or portions thereof ... that she determines to be untrustworthy." *Id.* 109 S.Ct. at 448–49. The court was correct to be suspect of an apparently offhanded remark in a report containing tips from informants, and to rule that the circumstances of the report did not sufficiently guarantee its trustworthiness. Defense counsel failed to establish any foundation for allowing the report in as evidence; he offered no evidence as to how the report was prepared or the basis of the information contained in the report.

Moreover, defense counsel was allowed to freely cross-examine the officer regarding the officer's knowledge of the informant's reliability.[3]

The district court's determination that there were not sufficient indicia of trustworthiness also precluded application of Rule 803(24). Under that Rule, a hearsay statement not covered by specific exceptions may be admitted if various conditions are met, including that the statement have "equivalent guarantees of trustworthiness." Fed.R.Evid. 803(24). Statements which the district court finds not to have such guarantees of trustworthiness cannot be admitted under this Rule. *United States v. Wilkus*, 875 F.2d 649, 654–55 (7th Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 184, 107 L.Ed.2d 139 (1989); *F.T.C. Travel v. Amy Travel Service, Inc.*, 875 F.2d 564, 576 (7th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 366, 107 L.Ed.2d 352 (1989).

## B. Admission of co-conspirator statements

Ann claims that the district court improperly admitted, under Fed.R.Evid. 801(d)(2)(E), the statement of Juanita to an undercover police officer that Juanita was going to Ann's house to pick up cocaine. Ann argues that this statement was hearsay and was not exempted under the Rule.

Under Rule 801(d)(2)(E), "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy" is not hearsay. To admit a statement under the Rule, the government must demonstrate, by a preponderance of the evidence, that (1) a conspiracy existed, (2) the defendant and declarant were members of the conspiracy, and (3) the statement was made in furtherance of the conspiracy. *United States v. Arvanitis*, 902 F.2d 489, 500 (7th Cir.1990). We will reverse a district court's finding that these three elements have been met only where clearly erroneous. *Id.*

---

**3.** Given our reasoning, we need not address the district court's concern that use of the statement here was not against the government.

■ The existence of a conspiracy involving members of the Romo family has not been seriously challenged, and the evidence demonstrating that such a conspiracy existed at the time Juanita made the statement is substantial. The fact that a statement by one co-conspirator informing another co-conspirator that she was going to get the cocaine and whom she was getting it from clearly furthered the conspiracy. *See United States v. Potts*, 840 F.2d 368, 371 (7th Cir.1987) (statements made to advise co-conspirators of the progress of the conspiracy are in furtherance of the conspiracy). The only real issue therefore concerns the second element. Ann's primary claim is that the government did not demonstrate that she was a member of the conspiracy. She claims that Juanita's hearsay statement was inherently unreliable and could not be considered, and that no source other than the hearsay corroborated the statement. We disagree with both arguments.

The district court judge properly took Juanita's statement itself into consideration when determining whether Ann was a member of the conspiracy. In *Bourjaily*, 483 U.S. at 181, 107 S.Ct. at 2782, the Supreme Court held that "a court, in making a preliminary factual determination under Rule 801(d)(2)(E), may examine the hearsay statements sought to be admitted." Thus, Juanita's statement that Ann was going to give her the cocaine is probative of both Ann and Juanita's membership in the conspiracy. *Id.* at 180, 107 S.Ct. at 2781. The Court's express refusal to decide whether the hearsay statement itself could alone be sufficient to prove a defendant's participation in a conspiracy, *id.* at 181, 107 S.Ct. at 2781–82, is irrelevant here, because there was also evidence outside of Juanita's hearsay statement to demonstrate Ann's participation in the ongoing drug conspiracy. After Juanita made the statement that she was going to Ann's to pick up the cocaine, police outside of the apartment followed Juanita from her apartment to Ann's apartment, and back again to Juanita's apartment. Juanita then delivered cocaine to the undercover police officer in her apartment. When viewed in connection with Juanita's statement, this evidence strongly suggests that Ann was involved in the conspiracy at the time the statement was made. Moreover, there were also three later instances of Ann selling cocaine to an undercover police officer, and a later search of Ann's apartment revealed a loaded handgun and a triple-beam scale. We conclude that there was "substantial evidence" connecting Ann to the conspiracy, *de Ortiz*, 907 F.2d at 635–36; *United States v. Durrive*, 902 F.2d 1221, 1229 (7th Cir.1990), and therefore the district court's finding that Ann was a member of the conspiracy was not clearly erroneous.

## IV. Probable Cause Supporting Search Warrant

■ David, Jr. argues that the search warrant authorizing the search of the tavern and his apartment, pursuant to which the .7 grams of cocaine were found in his apartment and the nine packets of cocaine were seized from the tavern, was not supported by probable cause. He claims that the "fill-in-the-blanks" affidavit submitted by Gerald Stanaszak, the investigating officer, was an insufficient basis for the warrant. The district court upheld the issuing magistrate's probable cause determination.

A magistrate's probable cause determination will be upheld if he "had a 'substantial basis for ... conclud[ing]' that a search would uncover evidence of wrongdoing...." *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983) (quoting *Jones v. U.S.*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)). Our standard of review over a district court's denial of a motion to suppress evidence for lack of probable cause is not entirely settled. *Compare McNeese*, 901 F.2d at 593–94 (stating that court will reverse only where finding is clearly erroneous); with *United States v. Soto*, 908 F.2d 209, 211 (7th Cir.1990) (stating that district court's probable cause finding is reviewed *de novo*) and *U.S. v. Malin*, 908 F.2d 163 (7th Cir.1990) (stating that appellate courts independently review the sufficiency of affidavits supporting the warrant); *see also*

*id.* at 169 (Easterbrook, J. concurring) (discussing the conflicting standards of review). We need not resolve this dispute here, however, because even under the less deferential *de novo* review of the warrant, we uphold the district court's finding of probable cause.

A search warrant may be issued only if it appears from the complaint or affidavit filed in support of it that there is probable cause to believe that an offense has been committed and that the defendant has committed it. *See* U.S. Const. amend. IV; Fed.R.Crim.P. 4(a). An affidavit has made a proper showing of probable cause when it sets forth facts sufficient to induce a reasonably prudent person to believe that a search thereof will uncover evidence of a crime. *Berger v. New York*, 388 U.S. 41, 55, 87 S.Ct. 1873, 1881, 18 L.Ed.2d 1040 (1967).

*McNeese*, 901 F.2d at 592. We believe Officer Stanaszak's affidavit made a proper showing of probable cause here. The affidavit provided more than just the conclusory statements of an investigating officer. *Cf. Gates*, 462 U.S. at 239, 103 S.Ct. at 2332–33. It gave substantial information obtained from a police informant who (1) observed David, Jr. with large quantities of cocaine and cocaine paraphernalia in the tavern and his apartment within the 72 hours preceding the warrant application, and (2) had purchased cocaine from David, Jr. at David, Jr.'s apartment. The evidence supporting the reliability of this informant was also substantial: the informant had provided information on two prior occasions resulting in drug charges against three individuals; he had made four prior "controlled buys" for police officers; and he had helped establish a relationship between an undercover officer and a drug dealer. We do not believe that the affidavit is invalid to support a search warrant simply because it had a preprinted format. As long as there is sufficient information to provide probable cause for the search, the fact that the affidavit is partially preprepared is irrelevant.

## V. Denial of Request for Alleged *Brady* Material

Juanita claims that the district court erred in denying her motion for the production of allegedly exculpatory material under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). She had requested that the prosecutors make various inquiries of the local police involved in the investigation which led to her indictment. The district court denied her motion, holding that the prosecutors were not required to make the detailed search for exculpatory information from non-governmental agencies that would be required to satisfy her broad-reaching requests. We review the district court's denial of Juanita's discovery request for abuse of discretion. *United States v. Phillips*, 854 F.2d 273, 277 (7th Cir.1988).

In *Brady*, 373 U.S. at 87, 83 S.Ct. at 1196–97, the Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment...." However, prosecutors are not usually required to seek out information which is not in their possession. *Cf. Mendoza v. Miller*, 779 F.2d 1287, 1297 (7th Cir.1985), *cert. denied*, 476 U.S. 1142, 106 S.Ct. 2251, 90 L.Ed.2d 697. Moreover, "The *Brady* analysis assumes the discovery, after trial, of favorable, material information known to the prosecution but unknown to the defense." *U.S. v. Navarro*, 737 F.2d 625, 631 (7th Cir.), *cert. denied*, 469 U.S. 1020, 105 S.Ct. 438, 83 L.Ed.2d 364 (1984). Juanita's discovery request in the district court gave no indication that there was any exculpatory material to be discovered. Like *Navarro*,

> here the defendants have given no indication of the existence of such material information or that the government knows of such information which would likely have changed the verdict or created reasonable doubt that did not otherwise exist.

*Id.* Juanita's counsel stated at argument "I can't say what they would have found." We have held that a defendant is not enti-

tled to discovery material under *Brady* "without even a hint that impeaching material was contained therein," *United States v. Andrus*, 775 F.2d 825, 843 (7th Cir.1985), or where the defendant "has made no showing at all by affidavits or otherwise that any evidence was suppressed by the government." *United States v. Driver*, 798 F.2d 248, 251 n. 1 (7th Cir.1986). Further, under the "open file" discovery policy used in this case, the federal prosecutors made available all material that was actually in their possession, which negates most arguments that the prosecutors suppressed exculpatory information. See *Driver*, 798 F.2d at 251.

Moreover, Juanita's trial counsel could have subpoenaed the local police agency, including the local custodian of records, to find out if they were in possession of any exculpatory material. Counsel admitted at argument that he did not attempt to subpoena any local law enforcement officials. His strategic decision or mere failure to do so should not place the burden on the federal prosecutors to seek out such information on behalf of a defendant.

In sum, we agree with the district court that Juanita's request for material from the local police agency was not within the scope of *Brady*, and therefore hold that the court did not abuse its discretion in denying her discovery request.

VI.  § 841 Mandatory Penalty Provisions

■ David, Jr. and Ann argue that the application to them of the mandatory ten-year term under 21 U.S.C. § 841 for offenses involving five kilograms or more of cocaine constituted cruel and unusual punishment under the Eighth Amendment. Imposition of the ten-year term is not only within the maximum term provided by Congress, but indeed is required as the minimum sentence for offenses in this category. We have repeatedly found that "sentences imposed pursuant to § 841(b) are constitutional and do not violate the prohibition against cruel and unusual punishment." *See McNeese*, 901 F.2d 585, at 606 (7th Cir.1990) (listing cases). We find no merit to defendants' claims that because of their age, involvement and record the ten-year sentence was cruel and unusual. *See U.S. v. Threw*, 861 F.2d 1046, 1049 (7th Cir.1988).

VII.  Sufficiency of the Evidence

David, Jr. and Ann argue that the evidence was insufficient to support their conspiracy convictions. Defendants do not challenge the existence of the conspiracy, but rather argue that their involvement in a conspiracy to distribute in excess of five kilograms of cocaine was not sufficiently established. We recently held that

when the sufficiency of the evidence to connect a particular defendant to a conspiracy is challenged on appeal, 'substantial evidence' should be the test rather than 'slight evidence' or 'slight connection.' ... We are persuaded that when a criminal defendant raises a sufficiency of the evidence challenge to a conviction, including any conspiracy conviction, the correct standard of review is substantial evidence. Of course, we will continue to view the evidence in the light most favorable to the government and accept circumstantial evidence as support, even sole support, for a conviction.

*Durrive*, 902 F.2d at 1228–29 (citations omitted); *see also de Ortiz*, 907 F.2d at 635–36. Given this standard of review, we must uphold the jury's verdicts because there was substantial evidence to convict both David, Jr. and Ann of conspiracy.

■ As we concluded above, the evidence connecting Ann to the conspiracy was substantial. The evidence included: Juanita's statement to Reyes in front of the undercover officer that she was going to Ann's to pick up the cocaine; the fact that police outside of the apartment followed Juanita from her apartment to Ann's apartment, and back again to Juanita's apartment, after which Juanita delivered cocaine to the undercover police officer in her apartment; the three later instances of Ann selling cocaine to an undercover police officer; and the search of Ann's apartment which revealed a loaded handgun and a triple-beam scale. This evidence must be read in its totality rather than in isolated

pieces. *Durrive*, 902 F.2d at 1229 (quoting *United States v. Redwine*, 715 F.2d 315, 319 (7th Cir.1983), *cert. denied* 467 U.S. 1216), 104 S.Ct. 2661, 81 L.Ed.2d 367). Viewing this evidence in the light most favorable to the government, the jury could rationally have found that Ann was an active participant in the larger Romo family conspiracy.

We also conclude that the evidence against David, Jr. was substantial. A small amount of cocaine was retrieved from a search of his apartment; David, Sr. had instructed one of his sellers that whenever David, Sr. was out of town David, Jr. gave the orders for the cocaine business; David, Jr. gave two people parked in front of the tavern a baggie with about one ounce of cocaine, and stated that his father had told him to give it to them; Rosalez testified that he had on two occasions delivered one ounce of cocaine to David, Jr.; Reyes testified that he had once delivered cocaine to David, Jr. Again, looking at the totality of the evidence, the jury could rationally have found that David, Jr. was an active participant in the larger Romo family conspiracy.

Ann argues that the jury was forced to speculate that the drugs involved in the transactions to which she was linked had their source with David, Sr. We agree that the jury had to make inferences to reach the conviction verdicts, but such inferences, even from circumstantial evidence, are perfectly acceptable. *U.S. v. Williams*, 858 F.2d 1218, 1221 (7th Cir. 1988), *cert. denied*, 488 U.S. 1010, 109 S.Ct. 796, 102 L.Ed.2d 787 (1989). Similarly, David, Jr. argues that the evidence presented at trial actually only linked him to 13.4 ounces of cocaine rather than over five kilograms. While it may be true that David, Jr.'s actual contact was with less than five kilograms of cocaine, that does not prevent him from being convicted of a conspiracy involving the greater amount. Defendants need not know all the members or details of the conspiracy to be convicted of participating in that conspiracy, and are held liable for acts committed as objects of the conspiracy. *United States v. Missick*,

875 F.2d 1294, 1297 (7th Cir.1989); *United States v. Herrero*, 893 F.2d 1512, 1535 (7th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 2623, 110 L.Ed.2d 644 (1990). David, Jr.'s other argument—that the only person with whom the evidence showed he actually entered into an agreement was his father—fails for the same reason.

The convictions of David Romo, Jr., Ann Romo, and Juanita Romo, and the sentences of David, Jr. and Ann Romo, are

AFFIRMED.