**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Tyrone NICHOLS, Defendant–Appellant.**

**No. 89–2496.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 26, 1990.

Decided Aug. 10, 1990.

R. Jeffrey Wagner, Steven Biskupic, Asst. U.S. Attys., Milwaukee, Wis., for plaintiff-appellee.

Michael L. Chernin, Milwaukee, Wis., for defendant-appellant.

Before BAUER, Chief Judge, CUMMINGS and KANNE, Circuit Judges.

BAUER, Chief Judge.

Defendant–Appellant Tyrone Nichols was convicted by a jury for his participation in a conspiracy to sell cocaine. Nichols now contends that the trial court erred in its instructions to the jury regarding the substantive law of conspiracy. Specifically, Nichols objects to the court's modification of § 5.11 of this circuit's pattern jury instruction, *Federal Criminal Jury Instructions of the Seventh Circuit* § 5.11 (1980). The court deleted the section stating: "In determining whether the defendant became a member of the conspiracy, you may consider only the acts and statements of that particular defendant." Because this court, sitting *en banc, United States v. DeOrtiz*, 907 F.2d 629 (7th Cir. 1990), has held that § 5.11 is inconsistent with Fed.R.Evid. 104 and *Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987), Nichols was not enti-

tled to the instruction as a matter of law and the modification was not error. We, therefore, affirm.

## I.

Billy Cannon and Rodney "Hot Rod" Smith were rival drug dealers in Milwaukee. Following his arrest by federal agents, Cannon began providing information to and otherwise cooperating with federal authorities in drug investigations. On November 30, 1989, Cannon informed federal agents that Smith was organizing a large purchase of cocaine, eight to ten kilos, from Troy Shelton, one of Cannon's suppliers. Cannon explained that a burgundy Toronado with a secret compartment would be sent to a "safehouse" located at 7124 W. Silver Spring Drive in Milwaukee. Based on this information, the agents staked out the "safehouse" beginning at 10:00pm that night. As the agents pulled up near the house, they saw the burgundy Toronado parked in front. The next morning at around 9:30am, the agents saw the Toronado pull away from the "safehouse." Further surveillance was then conducted at Shelton's apartment complex in Calumet City, Illinois, the spot where Cannon had said the deal would be completed.

Four hours later, around 1:30pm, federal agents saw the Toronado arrive at Shelton's apartment complex. Tyrone Nichols was driving. Ricky Shields was the only passenger. According to Smith's testimony at trial, he often sent Shields on these errands to Chicago to pick up and deliver cocaine from Shelton. Smith met Nichols in November 1988, when Shields hired Nichols as his driver on these runs to Calumet City. On this day, the agents watched as Nichols and Shields waited in the Toronado in the parking lot for 45 minutes before Shelton pulled up in a Nissan Maxima. After several trips in an out of the apartment building, Shelton placed something inside the Nissan under the steering wheel, removed a blue duffel bag from the trunk, and then got into the Toronado with Nichols and Shields and drove away from the complex. Again, the agents followed.

After following for twenty minutes, the agents pulled the Toronado over to the curb. Nichols consented to a search of the car and the agents discovered an ounce of cocaine in a compartment behind the driver's seat. The agents then asked and received permission from Shelton to search the Nissan which had been left back at the apartment complex. A subsequent search of the Nissan uncovered 24 kilograms of cocaine and $274,000 in cash in a hidden compartment between the backseat and the trunk. Inside the Nissan, the agents also found a receipt bearing Tyrone Nichols' name.

For his role in the conspiracy, Nichols was indicted on two counts: one for conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2; and a second for travelling in interstate commerce with intent to promote unlawful activity in violation of 18 U.S.C. §§ 1952 & 2. A jury trial was held before Judge J.P. Stadtmueller on April 17, 1989. The jury returned a verdict of guilty on April 21, 1989. Nichols was sentenced to 156 months imprisonment. He subsequently filed a timely notice of appeal.

## II.

Nichols sole contention on appeal is that the court failed to instruct the jury that it may only consider Nichols words and actions in determining whether he joined the conspiracy. Nichols does not contend that any specific evidence was inadmissible on hearsay or relevancy grounds. Nor does he challenge the sufficiency of the evidence before the jury. Instead, he questions only the district court's failure to use the instruction listed in § 5.11 of this circuit's pattern instructions. This attack has been foreclosed, however, by our recent *en banc* decision in *United States v. DeOrtiz*, 907 F.2d 629 (7th Cir.1990).

■ The out-of-court statements of co-conspirators are admissible as evidence against the accused under Fed.R.Evid. 801(d)(2)(E), provided that the trial judge is satisfied by a preponderance of the evidence that such a conspiracy exists. *See* Fed.R.Evid. 104(a). In *Bourjaily v. Unit-*

ed States, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987), the Supreme Court held that the trial judge may consider hearsay statements in determining whether this threshold had been reached. *Id.* at 175–76, 107 S.Ct. at 2778–79. This apparently straightforward rule of admissibility is complicated, however, by Rule 104(b), which demands that where questions of *relevancy* turn on certain findings of fact those facts are to be determined by the jury. Thus, evidence may be admissible for purposes of 104(a) and *Bourjaily*, but only if the jury later determines that they are relevant pursuant to Rule 104(b). *See DeOrtiz*, at 632. When the evidence involves a co-conspirator's out-of-court statements, these ostensibly separate inquiries collapse into a single determination: whether the accused was a member of the conspiracy.

In *DeOrtiz*, we noted that the words and declarations of others are frequently relevant without direct evidence that the accused joined the conspiracy. *Id.* at 633 (citing *United States v. Dennis*, 183 F.2d 201, 230–31 (2d Cir.1950) (L. Hand, J.), *aff'd*, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951)). This is only logical; barring written confessions or in-court admissions of guilt, every guilty verdict is the product of other people's words and declarations. The change wrought by *Bourjaily* was that *out-of-court* declarations by co-conspirators became the predicates for the admission of the statements themselves. Such bootstrapping was not permitted under *Glasser v. United States*, 315 U.S. 60, 74–75, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942), but the *Bourjaily* Court held that the *Glasser* rule did not survive the Federal Rules of Evidence and that allowing such testimony did not violate the Confrontation Clause.

Reviewing these changes, we held in *DeOrtiz* that our pattern instruction as written confused rather than instructed the jury for purposes of reviewing co-conspirator statements. We determined that jurors should be told that they may consider the statements of other persons in order to help understand the words and acts of the defendant. We also noted, however, that under the substantive law of conspiracy, only the words and acts of the accused may be considered to determine whether the defendant indeed joined that conspiracy. If the jury determines that the defendant did so join, then they may consider the statements of the co-conspirators to decide any remaining questions. Our former pattern instruction § 5.11, we determined, did not make this analysis clear to the jury, and therefore it has been scrapped.

Significantly, *DeOrtiz* did not address the question of whether out-of-court co-conspirator statements standing alone are *sufficient* to support a conviction. Our opinion only discussed the admissibility and relevancy of such statements. Sufficiency is quite another matter. The Supreme Court has noted that while a co-conspirator's statement is "unreliable in isolation, [it] may become quite probative when corroborated by other evidence." *Bourjaily*, 483 U.S. at 180, 107 S.Ct. at 2781. As Judge Cudahy noted in his separate opinion in *DeOrtiz*, "a co-conspirator's statement *by itself* is inherently unreliable and insufficient to support a conviction for conspiracy." At 639 (Cudahy, J., dissenting) (emphasis in original). Reliance on sufficiency of the evidence claims seems a rather thin veil to protect a right as precious as that guaranteed by the Confrontation Clause, but *Bourjaily* and *DeOrtiz* dictate such a result and we cannot quarrel with it here.

Although defendant does not raise such a sufficiency challenge here, we note that such an attack would have been unavailing under the facts presented here. Tyrone Nichols' connection to the cocaine conspiracy for which he was convicted was supported by much more than the bare statements of Cannon, Smith or Shields. He was observed by federal agents driving a car with an ounce of cocaine in it. He waited for 45 minutes in a parking lot before his rendezvous with Shelton, and made several trips with Shelton into the apartment complex. A receipt bearing Nichols' name was found in Shelton's Nissan along with 24 kilograms of cocaine and $274,000 in cash. Shields may have told Smith that Nichols was his driver. Such

out-of-court statements are textbook examples of the co-conspirator exception to the hearsay rule. But this merely reinforced other, overwhelming, evidence against Nichols.[1] The out-of-court statements of co-conspirators alone did not serve to convict Nichols. His own words and actions did.

### III.

Because we held in *DeOrtiz* that pattern instruction § 5.11 was not consistent with Rule 104(a) or *Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 the district court was not required to give this instruction as requested by defendant. The modification of the instruction was, therefore, not error.

AFFIRMED.

---

**1.** As we noted above, Nichols does not attack the sufficiency of the evidence presented against him, only the modification of the jury instruction. We have, however, recently changed our standard for review of sufficiency claims and now demand "substantial evidence," rather than merely "slight evidence" or a "slight connection," in order to prove a defendant's participation in a conspiracy. *See United States v. Durrive*, 902 F.2d 1221, 1227–28 (7th Cir.1990) (Wood, J.).