**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Pedro TORRES, Defendant–Appellant.**

**No. 91–1803.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 4, 1991.

Decided June 2, 1992.

Barry R. Elden, Asst. U.S. Atty., Ronald D. May (argued), Office of U.S. Atty., Criminal Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellee.

Robert A. Korenkiewicz, Chicago, Ill. (argued), for defendant-appellant.

Before WOOD, Jr.* and CUDAHY, Circuit Judges, and GRANT, Senior District Judge.**

HARLINGTON WOOD, Jr., Circuit Judge.

Pedro Jose Torres appeals his convictions on a two-count indictment charging conspiracy to possess cocaine with intent to distribute and possession of cocaine with intent to distribute, violations of 21 U.S.C. § 846 and 21 U.S.C. § 841(a)(1) respectively. The amount of cocaine involved was approximately 500 grams. Torres claims the trial court's conspiracy "elements" jury instruction misstates the law and constitutes plain error. Torres also maintains the trial court abused its discretion when the court limited his counsel's attempted cross-examination of a government witness. Finally, Torres argues that the evidence presented at trial did not sufficiently support the jury's guilty verdict.

* Judge Wood, Jr. assumed senior status on January 16, 1992, after oral argument in this case.
** The Honorable Robert A. Grant, Senior District Judge of the United States District Court for the

## BACKGROUND FACTS

As the sufficiency of the evidence is challenged, we review it in some detail. On July 12, 1989, Torres was charged in a two-count indictment with violations of 21 U.S.C. §§ 846 and 841(a)(1). Torres's trial began on August 21, 1989. The government called three special agents to testify: John Mazzola, Special Agent for the Bureau of Alcohol, Tobacco, and Firearms ("ATF"), Stanley Grobe, Special Agent for the Drug Enforcement Administration ("DEA"), and Mark Guiffre, also a DEA agent. Co-defendant Julio Mayoral and Mayoral's attorney testified on Torres's behalf. The trial testimony provides the following background facts:

On July 12, 1989, Agent Mazzola and a confidential informant went to the corner of Wrightwood and Pulaski Streets in Chicago, Illinois to meet with individuals concerning an offer to sell the informant 500 grams of cocaine for $10,000. At the meeting place, Agent Mazzola went inside a gas station with a person named "Yusuf," who counted the agent's money. About 30 minutes later Jose Andres Martinez arrived. Martinez, Yusuf, the confidential informant and Agent Mazzola talked about the deal. During this conversation, Agent Mazzola informed the group that he could not go through with the transaction that day. Agent Mazzola wore a recording device which taped the entire conversation.

Three days later, Martinez called Agent Mazzola on Mazzola's undercover phone line. Martinez and Agent Mazzola arranged to meet the following afternoon at 2:00 p.m. The next morning Agent Mazzola and the informant contacted Martinez by pager. They arranged to meet near the intersection of Kimball and Armitage Streets that afternoon. Agent Mazzola and the informant arrived at the corner at 2:30 p.m. Martinez showed up at about 3:00 p.m. He made a call from a public booth nearby, and a short while later, three other men arrived at the corner and talked

Northern District of Indiana, sitting by designation.

with Martinez. Martinez then directed Agent Mazzola and the informant to follow him and his three friends to another location. Martinez drove to the corner of Talman and Western, and Agent Mazzola followed in his car with the confidential informant. At the corner, Martinez's front seat passenger, co-defendant Julio Mayoral, made several calls at a public phone booth. Martinez then drove to a bar on North Avenue west of California Avenue called "Del Amor," and Agent Mazzola followed.

The two cars parked in front of the bar. Agent Mazzola saw two men, one of whom was later identified as Torres, leave the bar and walk to a building two doors west. Torres was the maintenance person at Del Amor. Martinez then approached Agent Mazzola in his car and said "lo tiene." Agent Mazzola understood these words to mean Martinez had the cocaine. A few minutes later, Agent Mazzola testified he saw Torres return to Del Amor with the other man who left with him. Mayoral, who had gone into the bar earlier, came out and got in Martinez's car where Martinez was waiting. Martinez had presumably returned to his car after talking to Agent Mazzola, for the trial testimony indicates that after Mayoral got back into the car, Martinez left his car and walked over to Agent Mazzola's car. Martinez placed a small amount of a white powdery substance in Agent Mazzola's hand. Mayoral also got out of Martinez's car and approached Agent Mazzola, asking him if he approved of the sample and if he wanted the rest. Agent Mazzola answered in the affirmative to both questions.

Agent Mazzola got out of his car and entered Del Amor carrying a gram scale. An unidentified man told Agent Mazzola to "Get that thing [the scale] out of here, they'll close me up. You'll have to trust me, 500 grams." Agent Mazzola left the bar, taking the scale out to his car. When he returned he began a conversation with Mayoral. In the meantime, Mazzola testified, Torres and the unidentified man left Del Amor.

When Torres returned he was carrying a brown paper bag. Torres then motioned for Agent Mazzola and Mayoral to follow him to the back of the bar. There Agent Mazzola testified that Torres opened the bag so that the agent could inspect the bag's contents. Agent Mazzola saw that the bag held a plastic bag of white powder containing cocaine. After examining the white powder Mazzola told the group he was going out to his car to get the money. Mazzola left the bar and gave the signal for the other agents to make the arrest. Torres was arrested by Agent Grobe. Agents also found the brown paper bag with the cocaine in it in a vacant lot next to the bar. Later lab tests of the cocaine revealed that it was 52% pure.

Mayoral, who pleaded guilty, testified for the defense. He said that he instructed Torres to go get the brown paper bag from a building next to Del Amor but that he never told Torres what was in the bag. Mayoral then testified that Torres gave the brown bag to him (Mayoral) to show to Agent Mazzola.

On rebuttal, Agent Guiffre testified regarding a proffer Mayoral had given to the government. The proffer indicated that Torres, and not Mayoral, had shown the bag with cocaine in it to Mazzola. Mayoral's attorney then testified that at the proffer, Mayoral told the government Torres had given the bag to Mazzola.

The jury found Torres guilty as charged in the indictment on August 22, 1989.

## ANALYSIS

Torres claims that the district court materially misstated the law of conspiracy in instructing the jury. Torres first argues that part of the district court's conspiracy instruction allowed the jury to disregard the gravamen of the complaint and convict him without finding that he knowingly and intentionally conspired to distribute cocaine. Torres's next argument is that the jury was improperly instructed to consider the acts and statements of other co-conspirators in order to determine whether Torres was a member of the conspiracy. Last, Torres claims that the district court failed to instruct the jury that it must find beyond a reasonable doubt, from the defen-

dant's own words and statements, that the defendant knew the purpose of the conspiracy and willingly participated in the achievement of that purpose.

 Before we address Torres's claims of error, we note that Torres's trial counsel failed to object to the conspiracy instruction at trial. Therefore, the standard of review of all three of Torres's arguments regarding the instruction is plain error. Under this standard, reversal of conviction is justified only if the reviewing court is convinced that it is necessary in order to avoid an actual miscarriage of justice. *United States v. Silverstein*, 732 F.2d 1338, 1349 (7th Cir.1984), *cert. denied*, 469 U.S. 1111, 105 S.Ct. 792, 83 L.Ed.2d 785 (1985); *United States v. Douglas*, 818 F.2d 1317, 1320 (7th Cir.1987), *cert. denied*, 493 U.S. 841, 110 S.Ct. 126, 107 L.Ed.2d 87 (1989). Moreover, in determining whether the instruction constituted an error so prejudicial to Torres that reversal is necessary, we consider the instructions as a whole in light of the facts of the case and the evidence presented. *See United States v. Garcia*, 897 F.2d 1413, 1422 (7th Cir.1990); *see also United States v. Requarth*, 847 F.2d 1249, 1254 (7th Cir.1988).

 First, Torres claims error resulting from a portion the district court's conspiracy instruction which reads: "It is not necessary that each of the paragraphs describing the conspiracy be proved in order for you to determine that a conspiracy existed." [1] Torres says that this instruction al-

lowed the jurors to disregard paragraph one of Count One of the indictment. The first paragraph of Count One names the co-conspirators and recites the language necessary to plead a violation of 21 U.S.C. § 846. [2] The remaining paragraphs of Count One, paragraphs two through six, describe the conspiracy and overt acts committed in furtherance of the conspiracy. Torres admits that 21 U.S.C. § 846 does not require proof of overt acts in order to sustain a conviction. *See United States v. Scroggins*, 939 F.2d 416, 421 n. 4 (7th Cir. 1991) (government need not charge or prove overt act to sustain a drug conspiracy conviction). And, Torres says the instruction might have been acceptable if it had applied only to paragraphs two through six instead of to all six paragraphs. Torres argues, however, that because the instruction applied to all six paragraphs of Count One, the jury was allowed to disregard the only paragraph which cannot be disregarded in order to convict him.

We believe that any problem created by the portion of the conspiracy instruction quoted above was cured by the district court's initial instruction on the essential elements of conspiracy:

> In order to establish the offense of conspiracy the government must prove these elements beyond a reasonable doubt:
>
> 1. that the alleged conspiracy existed, and

---

**1.** At oral argument, counsel for the government was asked whether this instruction came from our pattern instruction; it does not. However, there is a portion of the Seventh Circuit's pattern conspiracy instruction which is similar to the instruction given in this case. A portion of our conspiracy instruction, § 5.11, lists a bracketed paragraph which the Committee Comment directs should not be given where the applicable conspiracy statute does not require proof of an overt act, like the statute in this case. The bracketed paragraph states:

> A conspiracy is not proved unless the evidence establishes that at least one overt act was committed by at least one conspirator to further the purpose of the conspiracy. It is not necessary that all the overt acts charged in the indictment be proved, and the overt act itself may be a lawful act.

**2.** Paragraph one of Count One of the indictment states:

> From on or about June 9, 1989, the exact date being unknown, through June 16, 1989, at Chicago, in the Northern District of Illinois, Eastern Division,
>
> JOSE MARTINEZ,<br>JULIO MAYORAL,<br>PEDRO TORRES, and<br>CARLOS MENDOZA,
>
> defendants herein, did conspire with each other and with others known and unknown to the grand jury knowingly and intentionally to possess with intent to distribute and to distribute cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

2. that each defendant knowingly and intentionally became a member of the conspiracy.

A conspiracy is a combination of two or more persons to accomplish an unlawful purpose.

The language about which Torres complains immediately follows the instructions listed above. Most jurors do not possess vast knowledge of the law and may not comprehend "legalese" such as "overt act" or the difference between which paragraphs of an indictment are essential to the charge and those which are merely descriptive. However, we find the possibility very small that the jury, by blindly following the instruction Torres claims is flawed, could have disregarded the instructions regarding the essential elements of conspiracy in order to convict Torres for distributing the brown paper bag without knowledge of its contents and for merely being present while the other defendants completed the conspiracy. Therefore, while somewhat ambiguous, the language in the instruction does not constitute plain error.

Next, Torres maintains that the trial court erred by not including a paragraph from the Federal Criminal Jury Instructions of the Seventh Circuit regarding conspiracy. Specifically, Torres points to the fourth paragraph of § 5.11 which reads: "In determining whether the defendant became a member of the conspiracy you may consider only the acts and statements of the particular defendant." In contrast, the district court here instructed the jury:

In determining whether a defendant became a member of the conspiracy you may consider the acts and statements of that particular defendant. You may also consider and weigh the acts and statements of other alleged conspirators which were made during the course of the alleged conspiracy, as bearing on the question of a defendant's membership in the alleged conspiracy.

Again, we note that the relevant standard of review is plain error.

This same argument was raised by the defendant on appeal in *United States v. Nichols*, 910 F.2d 419 (7th Cir.1990). In *Nichols* we stated that an attack on the district court's failure to include paragraph four from § 5.11 has been foreclosed by this court's decision in *United States v. Martinez de Ortiz*, 907 F.2d 629 (7th Cir. 1990). *See also United States v. Brown*, 940 F.2d 1090, 1094 (7th Cir.1991); *United States v. Romo*, 914 F.2d 889, 893 (7th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1078, 112 L.Ed.2d 1183 (1991); *United States v. Caliendo*, 910 F.2d 429, 433 (7th Cir.1990). Chief Judge Bauer, writing for the *Nichols* court, stated that our former pattern instruction § 5.11 has been scrapped. 910 F.2d at 421.

We emphasize, however, that the *de Ortiz* decision did not change the substantive law of conspiracy. As a matter of substantive law, membership in a conspiracy depends on the accused's own acts and words. *de Ortiz*, 907 F.2d at 635. In this case, the district judge gave several instructions to the jury regarding evaluation of the evidence as to each defendant in addition to the conspiracy instruction. The following are examples:

Although the defendants are being tried jointly, you must give separate consideration to each defendant. In doing so you must analyze what the evidence in the case shows with respect to each defendant, leaving out of consideration any evidence admitted solely against some other defendant or defendants. Each defendant is entitled to have his case decided on the evidence and the law applicable to him.

Where two or more persons are charged with the commission of a crime, the guilt of one may be established without proof that each of the defendants performed every act constituting the crime charged. However, you must give separate consideration to each individual defendant, and to each separate charge against him. *Each defendant is entitled to have his case determined from his own conduct* and from the evidence which may be applicable to him.

(Emphasis added.)

We believe that the instructions, as a whole, adequately informed the jury that in

order to determine whether Torres was a member of the conspiracy the jury was to evaluate the statements of other persons only to decide what Torres did or said. The language included in the conspiracy instruction did not, as Torres argues, allow the jury to credit "anything" the other co-conspirators said or did during the entire course of the conspiracy in order to determine whether Torres was also a co-conspirator. Therefore, no plain error resulted from the district court's failure to use the fourth paragraph from this circuit's pattern instruction § 5.11.[3]

■ In his last argument concerning the conspiracy instruction, Torres contends that the district court impermissibly left out the final sentence of the last paragraph of our pattern instruction on conspiracy. The last paragraph of § 5.11 reads:

To be a member of the conspiracy, the defendant need not join at the beginning or know all the other members or the means by which the purpose was to be accomplished. **The government must prove beyond a reasonable doubt, from the defendant's own acts and statements, that he was aware of the common purpose and was a willing participant.**

(The district court left out the sentence in bold.)

Although the district court did not include the last sentence of our pattern instruction regarding the government's burden of proof when instructing the jury on conspiracy specifically, the court did instruct the jury more generally that "the government has the burden or proving the guilt of the defendants beyond a reasonable doubt, and this burden remains on the government throughout the case," and the jury was instructed to give separate consideration to each defendant by evaluating only the evidence applicable to each defendant. Granted, the conspiracy instruction

would probably have been more clear if an instruction regarding the government's burden was included. However, the omission of such language does not constitute plain error when the instructions are considered as a whole.

Next, Torres contends that the district court abused its discretion by precluding Torres's counsel from completing his attempted impeachment of Agent Guiffre. Specifically, Torres maintains his trial counsel was not allowed to ask Agent Guiffre about an affidavit which the agent had prepared and filed in support of the criminal complaint when Torres was arrested. Agent Guiffre's affidavit recounts the events that happened in Del Amor, and it was drafted less than 24 hours after Torres's arrest. The relevant paragraph is numbered "5" and reads:

5. The undercover agent then entered the bar with JULIO RAYMOND MAYORAL, and the two discussed cocaine trafficking. At that time, PEDRO JOSE TORRES exited the bar and walked to and entered 2910 West North Avenue. A short while later PEDRO JOSE TORRES, exited 2910 West North Avenue with a brown paper bag in his hand, and entered the bar where he met with JULIO RAYMOND MAYORAL and the undercover agent. At that time, **the brown paper bag carried by PEDRO JOSE TORRES was opened** revealing a white powdery substance to the undercover agent.

The defense counsel argued at trial that the relevant portion (highlighted above) of the affidavit was impeaching because Guiffre asserted on the stand that Agent Mazzola had told him on two separate occasions that Torres was the individual who had shown Mazzola the cocaine in the bag, while the affidavit, written in the passive voice, does not indicate that Torres (or anyone in particular) opened the bag. The

---

3. In *de Ortiz*, Judge Easterbrook included in the opinion an instruction that "would suffice." *See de Ortiz*, 907 F.2d at 635. A portion of that instruction reads: "Please remember, however, that only the defendant's own words and acts show whether he joined. You therefore should use statements by other persons to decide what

the defendant did and said, or to help you understand the defendant's acts and words." If the district court in this case had included in its instruction a more specific instruction concerning how co-conspirator evidence should be evaluated, Torres's appeal on this ground would have been obviated.

government objected to the defense's question, and the trial court sustained the objection, concluding that the affidavit was not impeaching.

On appeal, Torres says that his rights under the Confrontation Clause of the Sixth Amendment were violated by the trial court's limitation of his trial counsel's cross-examination of Agent Guiffre. The district court has wide discretion to limit cross-examination, and our review of a decision to limit cross-examination is abuse of discretion. *See United States v. Goodapple*, 958 F.2d 1402, 1408 (7th Cir.1992). In this case it was not an abuse of discretion for the district court to preclude Torres's trial counsel from questioning Agent Guiffre regarding the affidavit. We base this decision in large part on the fact that, while the affidavit statement is not a model of clarity, it does not really contradict Agent Guiffre's testimony. The paragraph focuses on Torres, and it was fair for the district court to conclude Torres was the person who opened the bag.

The government asserts that law schools and law journals "universally frown upon the use of passive voice, but the average writer does not consider this literary construction with such contempt." Whether or not the average writer is contemptuous of sentences written passively is not the issue. The issue is clarity. Good writers eschew the passive voice not only because a sentence written passively is often not as forceful as a sentence written actively, but more importantly, because sentences written passively are often more ambiguous than those written actively. Agent Guiffre's sentence poignantly illustrates how a passively written sentence can lead to possible confusion. It is true that the sentence in the affidavit ("the brown paper bag carried by Torres was opened revealing a white powdery substance to the under cover agent") "certainly doesn't indicate anybody else" opened the bag, as the district court concluded. It is also true that the sentence obviously does not indicate who, in fact, opened the bag. If one is going to write in the passive, one should at least include all of the necessary prepositional phrases for clarity's sake—not be-

cause law journals and law schools require it.

Finally, Torres asks us to find that the government did not meet the "substantial evidence" test this court set out in *United States v. Durrive*, 902 F.2d 1221 (7th Cir. 1990), which is necessary to sustain a conspiracy conviction. Torres says the sole evidence of his knowing and intentional membership in the conspiracy is his "opening and display" conduct; that he opened the brown paper bag in front of Agent Mazzola and showed Mazzola the contents. This, Torres says, is not enough.

In order to meet the burden set out in *Durrive* the government may rely on circumstantial evidence and any reasonable inferences drawn from such evidence concerning the relationship of the parties, their overt acts, and the totality of their conduct. *See United States v. Jones*, 950 F.2d 1309, 1313 (7th Cir.1991), *cert. denied, Tolliver v. United States*, — U.S. ——, 112 S.Ct. 1700, 118 L.Ed.2d 410 (1992) (quoting *United States v. Redwine*, 715 F.2d 315, 320 (7th Cir.1983)).

In this case the record indicates that there was more evidence than just the "opening and display" conduct pointing to Torres's participation in the conspiracy. Agent Mazzola testified that he saw Torres and an unidentified man leave the Del Amor bar and enter a building two doors west. Mayoral testified that the defendants stored cocaine in the building Torres entered. After Torres and the unidentified man returned to the bar, Mayoral came out of the bar and went to Martinez's car. Martinez then gave Agent Mazzola a sample of cocaine. Agent Mazzola also testified that while he was inside the bar, Torres left again and went to the same building two doors west, returning with a brown paper bag. Agent Mazzola stated at the trial that Torres opened the bag and showed him the drugs inside. The jury was entitled to decide, based on this evidence, that Torres was a knowing and willing participant in the conspiracy. And, we will not overturn a jury's verdict unless no rational trier of fact could have found the

essential elements of knowledge or intent beyond a reasonable doubt. *Jones*, 950 F.2d at 1313 (citations omitted).

## CONCLUSION

Because we find no reversible error, we affirm Torres's conviction.

AFFIRMED.