Tyrone **NICHOLS**, Petitioner–Appellant,

v.

**UNITED STATES of America,**
**Respondent–Appellee.**

No. 94–2105.

United States Court of Appeals,
Seventh Circuit.

Submitted Aug. 22, 1995.*

Decided Jan. 26, 1996.

concluded that oral argument would not be helpful to the court in this case. The notice provided

that any party might file a "Statement as to Need of Oral Argument." *See* Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and the record.

Tyrone Nichols (submitted), Milan, MI, pro se.

John E. Fryatt, Chris R. Larsen, Office of the United States Attorney, Milwaukee, WI, for Respondent–Appellee

Before CUMMINGS, COFFEY and ROVNER, Circuit Judges.

COFFEY, Circuit Judge.

Tyrone Nichols participated in a drug conspiracy engaged in transporting multi-kilogram quantities of cocaine between Chicago and Milwaukee. In 1989, he was convicted by a jury of conspiracy to possess cocaine with the intent to distribute, in violation of 21 U.S.C. §§ 841 and 846, and interstate travel with the intent to promote a drug offense, in violation of 18 U.S.C. § 1952. The trial court found Nichols responsible for 50 kilograms of cocaine and imposed a sentence of 156 months (13 years) of imprisonment to be followed by five years of supervised release.[1] His conviction and sentence were affirmed on direct appeal. *See United States v. Nichols,* 910 F.2d 419 (7th Cir.1990). Nichols filed a petition challenging his sentence under 28 U.S.C. § 2255, arguing that (1) he received ineffective assistance of counsel at sentencing and (2) his sentence violated due process. The district court denied his petition, and he appeals.

## I. Appellate Jurisdiction

The government argues that we have no jurisdiction to hear Nichols' appeal be-

---

**1.** Nichols received a 156–month sentence for the conspiracy conviction and a concurrent 120–month sentence for the interstate travel charge. In addition, the five-year supervised release term imposed for the conspiracy charge is to run concurrently to a three-year term for the interstate travel charge.

cause his notice of appeal was defective. The procedural history of this case is quite unusual. Nichols initially filed his § 2255 motion in 1992 (district court docket number 92 C 976). On February 14, 1994, the district court granted him 60 days to amend his petition. On April 11, 1994, within the 60-day limit, Nichols submitted a new petition. The district court, rather than construing the April 1994 petition as an amended petition (as it should have), treated it as a *new* petition and assigned it a 1994 docket number (94 C 383). On April 20, 1994, the district court entered an order dismissing the 1992 petition, stating that Nichols had failed to file an amended petition within 60 days. The court noted, however, that "Mr. Nichols chose to file a new petition ... [thus] [t]he court will proceed with Mr. Nichols' new petition, and dismiss the [1992] petition." District Court Order (April 20, 1994) at 1.[2] On May 9, probably confused by this turn of events, Nichols filed two documents: (1) a motion asking for clarification of the district court's order and (2) a notice of appeal. The docket number on the notice of appeal is 92 C 976.

The next day (May 10), the district court entered an order dismissing the 1994 petition on the merits. Nichols failed to file a new notice of appeal. Subsequently, the parties and the court treated the appeal from the dismissal of the 1992 petition as if it were an appeal from the denial of the 1994 petition. An appearance form filed by the United States on May 13 lists the district court docket number as 94 C 383. Also on May 13, this court sent Nichols a Circuit Rule 3(b) statement concerning the payment of the docket fee, which states that the district court docket number is 94 C 383. On July 5, Nichols filed a request with the district court to allow him to proceed in forma pauperis on appeal.[3] The request lists the lower court docket number as 94 C 383 and the appellate docket number as 94–2105 (this appeal). Nichols' brief, filed on September 29, 1994, states the lower court docket number as 94 C 383. The government's brief, perhaps due to this confusion, fails to specify a district court docket number. The Seventh Circuit docket sheet lists the district court docket number as 94 C 383.

■ The government argues that because the original notice of appeal related to the 1992 petition, we are without jurisdiction to consider the merits of the 1994 petition in this appeal. The notice of appeal, filed on May 9, states an intent to appeal from the April 20, 1994 order dismissing the 1992 petition. Fed.R.App.P. 3(c) requires that the notice of appeal "designate the judgment, order, or part thereof appealed from." Nichols' notice of appeal does not (and indeed, having been filed on May 9, 1994, could not) designate a desire to appeal from the May 10, 1994 order. This flaw, however, is not sufficient to divest us of jurisdiction to review the May 10 order. Although Rule 3 is jurisdictional, the Supreme Court has directed that it be liberally construed. *Smith v. Barry*, 502 U.S. 244, 248, 112 S.Ct. 678, 681, 116 L.Ed.2d 678 (1992). Even papers "technically at variance" with Rule 3 may be sufficient to confer jurisdiction "if the litigant's action is the functional equivalent of what the rule requires." *Id.* (quoting *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 316, 108 S.Ct. 2405, 2408, 101 L.Ed.2d 285 (1988)). The purpose of Rule 3 "is to ensure that the filing provides sufficient notice to other parties and courts, ... [so] the notice afforded by a document, not the litigant's motivation in filing it, determines the document's sufficiency as a notice of appeal." *Smith*, 502 U.S. at 248, 112 S.Ct. at 682.

Technically, Nichols' notice of appeal is defective as an appeal from the May 10 order. His subsequent filings, however, evidence an intent to appeal from the May 10 order, and this court treated the appeal as if it were an appeal from the May 10 order. In *Smith*, the Supreme Court held that an appellant's brief, filed within the time permitted

---

2. No petitioner under § 2255 would wish to have an amendment construed as a new petition, because the district court has the power to summarily dismiss successive petitions that fail to "allege new or different grounds for relief." Rules Governing § 2255 Proceedings, 9(b).

3. The district court granted Nichols in forma pauperis status on August 26.

to appeal from the judgment of the district court, constituted the functional equivalent of a proper notice of appeal. *Smith,* 502 U.S. at 249, 112 S.Ct. at 682. The Court reasoned that the brief qualified as a substitute because it "convey[ed] the information required by Rule 3(c)." *Id.; see also Listenbee v. Milwaukee,* 976 F.2d 348, 350–51 (7th Cir. 1992) (motion for extension of time to file notice of appeal construed as notice of appeal). In the instant case, Nichols' request to proceed in forma pauperis contained the information required by Rule 3(c) and was filed within 60 days of the May 10 judgment, satisfying Fed.R.App.P. 4(a)(1). In addition, the appearance form filed by the United States listing the district court docket number as 94 C 383 demonstrates that the government had notice that an appeal from the May 10 order was pending. Thus, because Nichols' filings were sufficient to notify the United States that an appeal from the May 10 order was pending, we have jurisdiction to review the district court's May 10 order denying the 1994 petition.

## II. Ineffective Assistance of Counsel

■ Nichols argues that his attorney's failure to object to the amount of drugs attributed to him at sentencing constitutes ineffective assistance. Nichols was represented by the same attorney, Michael Chernin,[4] at trial and on direct appeal; thus he is allowed to raise his ineffective assistance claim on collateral attack. *See Guinan v. United States,* 6 F.3d 468, 471 (7th Cir.1993). To prevail on his ineffective assistance claim, Nichols must demonstrate "(1) deficient performance and (2) prejudice." *Lockhart v. Fretwell,* 506 U.S. 364, 369, 113 S.Ct. 838, 842, 122 L.Ed.2d 180 (1993). Nichols' attorney performed deficiently if his representation "fell below an objective level of reason-

ableness." *Mason v. Godinez,* 47 F.3d 852, 855 (7th Cir.), *cert. denied,* — U.S. —, 116 S.Ct. 125, 133 L.Ed.2d 74 (1995); *see also Lockhart,* 506 U.S. at 369–370, 113 S.Ct. at 842–43; *Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To demonstrate prejudice, Nichols must establish that the result of his sentencing proceeding was rendered unfair or unreliable as a result of his attorney's error. *Lockhart,* 506 U.S. at 370, 113 S.Ct. at 843; *Davis v. Greer,* 13 F.3d 1134, 1139 (7th Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 328, 130 L.Ed.2d 287 (1994). The district court denied Nichols' petition without holding an evidentiary hearing.

■ Nichols argues that an evidentiary hearing is necessary to determine whether Chernin's failure to object to the amount of the drugs was reasonable. At sentencing, the court adopted the recommendation in the presentence report that 50 kilograms of cocaine were attributable to Nichols. The presentence report contains no supporting data explaining how it arrived at the 50–kilogram amount. In spite of this lack of detailed information, the district court never questioned the recommendation in the pre-sentence report nor made any factual findings regarding the amount of drugs attributable to Nichols.[5]

■ Under the sentencing guidelines, Nichols is responsible not only for the drugs with which he was directly involved but also for any drugs reasonably foreseeable in connection with the criminal conduct that he agreed to undertake. *See* U.S.S.G. § 1B1.3(a)(1). Nichols acted as a courier for a large drug conspiracy. The district court granted Nichols a two-level reduction under U.S.S.G. § 3B1.2 for being a minor partici-

---

**4.** The district court (Judge Stadtmueller) appointed Chernin as Nichols' attorney on March 8, 1989. Chernin represented Nichols at the trial, which was held later in that year, and on a direct appeal to this court decided August 10, 1990. *See United States v. Nichols,* 910 F.2d 419 (7th Cir.1990). His representation of Nichols ended at that time. In a later, unrelated case, Chernin committed a series of breaches of duty to a client and was barred from practicing before this court. *United States v. Perez,* No. 92–2837 (7th Cir. June 1, 1993) (unpublished order). In

banning Chernin from practicing before the Seventh Circuit, the court noted that he had "a history of dilatory conduct before this court." *Id.*

**5.** The sentencing court should "make explicit findings as to drug quantities" and should set forth those findings in a written sentencing memorandum. *United States v. Billops,* 43 F.3d 281, 289 (7th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 1389, 131 L.Ed.2d 241 (1995).

pant because he was "relatively new to the operation and less culpable than the other members of the organization." Presentence Report ¶ 27. We recognize that the determination of whether a defendant is a minor participant is a heavily fact-based inquiry, *see United States v. Burnett*, 66 F.3d 137, 140 (7th Cir.1995); U.S.S.G. § 3B1.2, comment. (backg'd.), thus the trial judge generally is in the best position to make this determination. Couriers, however, often play a far more important role than that of a minor participant. "[C]ouriers are an indispensable part of drug dealing networks.... A courier who willingly undertakes illegal transit without asking many questions is especially valuable to a criminal organization. When police apprehend[ ] a studiously ignorant courier, the organization can rest comfortably, knowing that its other operations remain hidden from the law." *United States v. Osborne*, 931 F.2d 1139, 1158 (7th Cir.1991) (*quoting United States v. Buenrostro*, 868 F.2d 135, 138 (5th Cir.1989), *cert. denied*, 495 U.S. 923, 110 S.Ct. 1957, 109 L.Ed.2d 319 (1990)). Therefore, "[a] defendant's status as a courier does not necessarily mean that he is less culpable than other participants in a drug conspiracy." *Osborne*, 931 F.2d at 1158 (*quoting United States v. Arredondo–Santos*, 911 F.2d 424, 426 (10th Cir.1990)); *cf. United States v. Salvador*, 18 F.3d 1380, 1383–84 (7th Cir. 1994). Accordingly, we have consistently rejected the argument that a courier is necessarily entitled to a reduction under § 3B1.2 for being a minor participant. *See United States v. Mounts*, 35 F.3d 1208, 1218–19 (7th Cir.1994), *cert. denied*, —— U.S. ——, 115

S.Ct. 1366, 131 L.Ed.2d 222 (1995); *United States v. Rossy*, 953 F.2d 321, 326 (7th Cir.), *cert. denied*, 502 U.S. 1120, 112 S.Ct. 1240, 117 L.Ed.2d 473 (1992); *Osborne*, 931 F.2d at 1157–59.[6]

## A. Cocaine Directly Attributable to Nichols

The conspirators began trafficking in cocaine in late 1986 or early 1987, and Nichols became involved during the latter part (probably early November) of 1988.[7] According to the investigation report, between September and November 1988, Nichols was one of several members of the conspiracy who was entrusted with the responsibility of transporting cash from Milwaukee to Chicago as well as transporting cocaine to Milwaukee on his return trips. Rodney Smith, one of the organizers of the conspiracy, testified that Nichols made "about five or six" trips between Milwaukee and Chicago to transport cash and cocaine.[8] Smith testified that he would have his drivers bring back between four and ten kilograms of cocaine on each trip. Smith also stated that he paid Nichols approximately $200 for each trip. The record is devoid of any other information concerning these "five or six" trips in which Nichols allegedly participated.

The record contains details about only one of the instances when Nichols attempted to transport drugs between Milwaukee and Chicago. On December 1, 1988, Nichols drove from Milwaukee to Calumet City, Illinois with Ricky Shields (another co-conspirator) to purchase ten kilograms of cocaine from a

**6.** The concurrence suggests that this issue is unnecessary to the resolution of the case and should not be addressed. We disagree. When the district court granted Nichols the reduction for being a minor participant, it failed to provide an explanation (apart from the recommendation in the presentence report) of how it came to the conclusion that he played a minor role in the conspiracy. This omission is important for, as discussed above, couriers often do not qualify as minor participants. In addition, contrary to the assertion in the concurrence, we are not stating that couriers can *never* qualify as minor participants. Rather, we are simply observing that couriers often play a more important role than that of a minor participant and do not *necessarily* qualify for a reduction under § 3B1.2. Finally, the government did not contest the district court's decision to grant Nichols a reduction

under § 3B1.2 either at sentencing or on direct appeal, and the record before us is inadequate to determine whether Nichols deserved the reduction. We therefore express no opinion on whether the district court's conclusion that Nichols qualified as a minor participant was proper.

**7.** It is unclear from the record exactly when Nichols joined the conspiracy. Rodney Smith, who organized the trips between Milwaukee and Chicago, testified that he first met Nichols in early November 1988. Smith's testimony is the only evidence in the record concerning when Nichols joined the conspiracy.

**8.** According to Smith, these trips took place in November 1988.

supplier named Troy Shelton. FBI agents, having received a tip, placed Nichols, Shields, and Shelton under surveillance and subsequently arrested them. The agents discovered $170,000 in cash and one ounce of cocaine during a search of Nichols and Shields' vehicle. In addition, the agents discovered 24 kilograms of cocaine that were hidden in a secret compartment in the car Shelton was driving.[9]

Nichols argues that the evidence is insufficient to establish that he made any trips other than the December 1 trip to Calumet City. Thus, he argues, he should have been held responsible for only 10 kilograms (plus the one ounce) of cocaine, and therefore his attorney provided ineffective assistance by neither objecting to much less questioning the 50–kilogram amount that the court adopted at sentencing. In denying Nichols' petition, the district court merely stated that "the sentencing transcript suggests that any objection would have been futile." District Court Order (May 10, 1994) at 4. We have examined the sentencing transcript, and we are forced to disagree, for no evidence concerning the amount of cocaine attributable to Nichols was presented at the sentencing hearing. In addition, the district court's statement does not contain any reasoning much less adequate analysis to assist us in understanding how the court came to the conclusion that Chernin's decision not to object was reasonable.

After reviewing the record, we believe that there is more than passing doubt concerning how much cocaine should have been directly attributed to Nichols. Although the December 1 trip (for 10 kilograms) is firmly estab-lished, Smith's testimony alone links Nichols to the other drug courier activities. If the sentencing court found Smith's testimony credible (no findings were ever entered in the record on this point), Nichols could conceivably be held responsible for 50 kilograms.[10] However, neither the investigation report, the presentence report, nor the trial testimony reveal the specific quantities of cocaine that Nichols transported much less the specific dates or circumstances concerning the dates when the other trips supposedly occurred. Although holding Nichols directly responsible for 50 kilograms is not implausible, any attempt to do so based on the current record requires us to speculate concerning how many trips were taken and how much cocaine each trip involved. In the absence of specific factual findings on this point by the trial court, we do not find it appropriate to engage in such speculation.

### B. Cocaine Reasonably Foreseeable to Nichols

Even if it is unclear whether 50 kilograms were directly attributable to Nichols, Chernin had no duty to object if he reasonably believed that 50 kilograms of cocaine were reasonably foreseeable to Nichols, but based upon the state of the record, we are not convinced that 50 kilograms were reasonably foreseeable to Nichols. The conspiracy was involved in cocaine trafficking for nearly two years (beginning in late 1986 or early 1987), but Nichols apparently participated for only one month (November 1988) before he was arrested. For the purposes of determining relevant conduct under the guidelines, Nichols is not responsible for any drug dealing

---

9. The government argues that Nichols was "directly linked" to the 24 kilograms of cocaine found in the secret compartment in Shelton's car. Government Brief at 10. The guidelines state that in an uncompleted transaction (such as this one), the buyer should be held accountable for the amount of drugs under negotiation (10 kilograms in this case), not the full amount possessed by the supplier. U.S.S.G. § 2D1.1, comment (n. 12) ("In an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount."); *United States v. Velasquez,* 67 F.3d 650, 654 (7th Cir.1995). Thus, on remand, the government would be well-advised to offer a detailed explanation of how it came to the conclusion that these 24 kilograms are attributable to Nichols.

10. Smith testified that Nichols made five or six trips and transported between four to ten kilos on each trip. Thus, according to Smith, Nichols was involved with between 20 and 60 kilograms of cocaine. To justify the 50–kilogram total adopted by the district court, each of these trips must have involved seven to ten kilos of cocaine, the exact amount varying based on whether Nichols made five trips or six trips and whether the December 1 trip is included in the "five or six" trips.

that took place before he joined the conspiracy. U.S.S.G. § 1B1.3, comment. (n. 2) ("A defendant's relevant conduct does not include the conduct of members of a conspiracy prior to the defendant joining the conspiracy, even if the defendant knows of that conduct.").[11] Still, he is responsible for any cocaine transactions that were reasonably foreseeable to him during the month (November 1988) that he participated in the conspiracy. After reviewing the record, we believe that it is unclear how much (if any) cocaine beyond the amount with which he was directly involved was reasonably foreseeable to Nichols.[12] The investigation report states that several other couriers accompanied Smith and/or Shields on trips between Milwaukee and Chicago between September and November 1988.[13] We are unable to ascertain from the record, however, what knowledge Nichols had of the other couriers or whether he was even in a position to comprehend the scope of the conspiracy. The district court never made any specific factual findings on this issue, and we do not feel competent to speculate, based on the state of the record before us, concerning how much cocaine was reasonably foreseeable to Nichols.

Although we are left with doubts regarding whether 50 kilograms should have been attributed to Nichols, we recognize the possibility that Chernin's decision not to object may, if "viewed from counsel's perspective at the time ... be considered sound trial strategy." *Kubat v. Thieret,* 867 F.2d 351, 360 (7th Cir.), *cert. denied,* 493 U.S. 874, 110 S.Ct. 206, 107 L.Ed.2d 159 (1989). Perhaps Chernin was in possession of facts not present in the record that motivated his decision not to object; for example, he may have known that the government could have proven that 50 kilograms were reasonably foreseeable to Nichols. *See United States v. Livingston,* 936 F.2d 333, 337 (7th Cir.1991) (failure to object to amount of drugs not ineffective assistance where additional factfinding would likely have been detrimental to the defendant), *cert. denied,* 502 U.S. 1036, 112 S.Ct. 884, 116 L.Ed.2d 787 (1992). But the record is devoid of evidence concerning what Chernin knew at the time.[14] We agree with Nichols that further factfinding is necessary to determine whether Chernin's decision was reasonable. We require a complete record in order to conduct a proper appellate review concerning whether Chernin acted reasonably. *United States v. Salvador,* 18 F.3d 1380, 1383 (7th Cir.1994).

If the facts, once elucidated and examined in more detail, undermine the court's confidence in the 50–kilogram amount, Nichols was prejudiced. Nichols could have received a significantly lower sentence were he held accountable for a lesser amount of cocaine.[15] Because the evidence does not conclusively demonstrate that Nichols is not entitled to relief, an evidentiary hearing is necessary. *Daniels v. United States,* 54 F.3d 290, 293

---

**11.** This language was added to the guidelines in 1994—four years after Nichols' trial and sentencing hearing. *See* U.S.S.G.App.C., Amendment 503. Before Amendment 503 was adopted, the Seventh Circuit followed a substantially similar rule concerning the liability of a defendant for acts committed by co-conspirators before he joined the conspiracy. *See United States v. Edwards,* 945 F.2d 1387, 1397 (7th Cir.1991) ("A defendant who enters the conspiracy in its final stages, who was not linked to the earlier transactions or with the co-conspirators in any substantial way, and who bought or sold an amount of drugs that was minuscule in comparison to the ... [total amount] distributed [by the conspiracy] may not be held responsible for all of the [drugs] distributed over the [life of the conspiracy]."), *cert. denied,* 503 U.S. 973, 112 S.Ct. 1590, 118 L.Ed.2d 308 (1992).

**12.** We are unable to ascertain from the record before us how much cocaine was directly attributable to Nichols. *See supra.*

**13.** The investigation report states that Smith participated in approximately 20–30 cocaine transactions during this time period. It is not clear how many of these transactions took place during the month of November.

**14.** For example, there is no statement from Chernin in the record explaining his decision not to object.

**15.** If between 10 and 15 kilograms of cocaine were attributed to Nichols, his sentencing range would be 120–121 months (the initial guideline range would have been 97–121 months, but he faced a ten-year statutory minimum under 21 U.S.C. § 841(b)(1)(A)). If Nichols were held responsible for 15–50 kilograms, his guideline range would be 121–151 months.

(7th Cir.1995). Thus, we remand Nichols' ineffective assistance claim to the district court for an evidentiary hearing.

### III. Due Process

Finally, Nichols argues that his due process rights were violated because the district court determined that he was a minor participant[16] in the conspiracy but sentenced him for the amount of drugs attributable to the entire conspiracy.[17] A participant in a conspiracy—even a minor participant—is responsible for any drugs that are reasonably foreseeable to him. Under the sentencing guidelines, if a defendant who performed a minor function in a drug conspiracy "foresees the broader network of production and distribution, then he can be sentenced for the amount of drugs attributable to the broader network." *United States v. Wesson*, 33 F.3d 788, 798 (7th Cir.1994), *cert. denied*, — U.S. ——, 115 S.Ct. 773, 130 L.Ed.2d 668 (1995); *cf.* U.S.S.G. § 1B1.3(a)(1)(B). If a defendant knew that he was playing a part in a large conspiracy, the court should consider this fact when imposing sentence. *See United States v. Lee*, 818 F.2d 1052, 1055 (2d Cir.) ("Any circumstance that aids the sentencing court in deriving a more complete and true picture regarding the convicted person's background, history, or behavior is properly considered."), *cert. denied*, 484 U.S. 956, 108 S.Ct. 350, 98 L.Ed.2d 376 (1987).

In addition, Nichols may not, in his post-conviction motion, ask us to revisit the sentencing court's calculation of the amount of the drugs simply by framing it as a due process argument. Even if the sentencing court made an error in calculating his guideline range (*e.g.*, attributed more drugs to Nichols than were reasonably foreseeable), this by itself does not constitute a violation of federal law or the Constitution that is cognizable under § 2255. *See Scott v. United States*, 997 F.2d 340 (7th Cir.1993).[18] Due process does require, however, that the amount of drugs attributed to Nichols is based on accurate information. *United States v. Coonce*, 961 F.2d 1268, 1275 (7th Cir.1992); *Blake v. United States*, 841 F.2d 203, 206 (7th Cir.1988). As discussed in Part II, *supra*, it is not clear that 50 kilograms of cocaine should have been attributed to Nichols. If Nichols can demonstrate that (1) there was inaccurate information before the sentencing court and (2) the court relied on the inaccurate information, his sentence was imposed in violation of due process. *Coonce*, 961 F.2d at 1275; *Blake*, 841 F.2d at 206. Nichols bears the burden of producing evidence that raises a question concerning the accuracy of the information. *Coonce*, 961 F.2d at 1279. If he meets this burden of production, the burden shifts to the government to "convince the court that the facts presented ... [at sentencing] are actually true." *Id.* at 1280. On remand, Nichols is entitled to the opportunity to present evidence that his sentence was based on inaccurate information.

### IV. Conclusion

An evidentiary hearing is necessary to determine whether the failure of Nichols' attorney to object to the amount of the drugs constituted ineffective assistance. The rec-

---

**16.** As discussed previously, we express no opinion concerning whether Nichols deserved a reduction for being minor participant. *See* pp. 1141–1142, *supra*.

**17.** If Nichols failed to raise this argument on direct appeal (which appears to be the case: *see United States v. Nichols*, 910 F.2d 419, 420 (7th Cir.1990)), it may be barred by procedural default unless Nichols can demonstrate cause and prejudice. *Barker v. United States*, 7 F.3d 629, 632 (7th Cir.1993), *cert. denied*, — U.S. ——, 114 S.Ct. 939, 127 L.Ed.2d 229 (1994). However, the government has neither argued procedural default nor provided the court with a copy of the brief that Nichols submitted on direct appeal. Because procedural default is not jurisdictional,

*Doe v. United States*, 51 F.3d 693, 698–99 (7th Cir.), *cert. denied*, — U.S. ——, 116 S.Ct. 205, 133 L.Ed.2d 139 (1995), any argument that Nichols has defaulted his due process claim is waived for the purposes of this appeal. *Cf. United States ex rel. Bonner v. DeRobertis*, 798 F.2d 1062, 1066 (7th Cir.1986).

**18.** Although the district court's calculation of the amount of the drugs is neither a constitutional nor a jurisdictional error cognizable under § 2255, Nichols does possess a constitutional right to the effective assistance of counsel. Thus, we may review his claim that his attorney provided ineffective assistance by failing to object to the district court's calculation of the amount of the drugs.

ord presented to us is insufficient to allow us to determine whether Chernin's decision not to object was reasonable. In addition, on remand, Nichols is entitled to present any evidence that might establish that his sentence was based on inaccurate information. Accordingly, we reverse the judgment of the district court and remand the case for an evidentiary hearing. Circuit Rule 36 shall apply on remand.

REVERSED AND REMANDED.

ROVNER, Circuit Judge, concurring in the judgment.

I agree that a remand is required in this case. I do not join the court's opinion, however, because my colleagues imply that it was improper for the district court to grant Nichols a minor-participant reduction under section 3B1.2 of the Sentencing Guidelines when that issue was neither raised nor briefed in this appeal. (*See ante* at 1141–1142.) Indeed, the court's discussion of the issue is entirely gratuitous, as it affects no issue raised in this post-conviction proceeding. Moreover, I fear that the court's discussion will serve only to muddy this circuit's law concerning when members of large drug conspiracies should be considered minor participants. Although I fully agree that a drug courier is not necessarily a minor participant by virtue of his status as a courier, I cannot agree that drug couriers can *never* be minor participants. (*See id.*) Here, for example, the district court did not consider Nichols a minor participant because he was a courier; it granted the reduction because Nichols was relatively new to the narcotics operation and was less culpable than its other members. The government has never suggested that the court's finding was in error, but my colleagues necessarily imply that it was. On the limited record before us, I do not see how the court's finding was the least bit erroneous, let alone clearly so. We should have refrained from any comment on the issue.

Second, I wish to clarify one point about Nichols' due process claim. As far as I can tell from the record, this claim was never raised on direct appeal, and it would therefore be defaulted unless Nichols could establish cause for the earlier omission. *United*

*States v. Frady,* 456 U.S. 152, 168, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1982). Of course, the fact that Nichols' trial and appellate counsel may have been ineffective could provide cause for the default, but Nichols has never offered such an explanation. To this point, however, the government has bailed him out, as it has yet to argue that the due process claim was defaulted when Nichols failed to raise it on direct appeal. I therefore agree that the claim should go forward.