974 F.2d 1333
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of AMERICA, Plaintiff-Appellee,
v.
Robert Lawrence PAYNE, Defendant-Appellant.
 No. 91-5029.
 United States Court of Appeals,
Fourth Circuit.
 Argued: December 3, 1991
Decided: September 1, 1992
 
 Appeal from the United States District Court for the Western District of Virginia, at Roanoke. James C. Turk, Chief District Judge. (CR-90-20-R)
 ARGUED: John Holliday Kennett, Jr., Roanoke, Virginia, for Appellant.
 Thomas J. Bondurant, Jr., Assistant United States Attorney, Roanoke, Virginia, for Appellee.
 ON BRIEF: E. Montgomery Tucker, United States Attorney, Roanoke, Virginia, for Appellee.
 W.D.Va.
 Affirmed.
 Before RUSSELL, WIDENER, and WILKINS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Robert Lawrence Payne challenges his convictions for one count of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 and four counts of distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Payne challenges the sufficiency of the evidence to sustain his convictions on the four distribution counts and the sufficiency of the evidence to support a jury finding that he was involved in a single conspiracy. He also contends that the district court erred in not granting his motion for separate trials on what he alleges were separate conspiracies.
 
 
 2
 Payne asserts that without the admission of one Mike Carner's statements to the government agent there was insufficient evidence to support the jury's convictions on the substantive distribution counts. He argues that those statements are not admissible as those of a coconspirator because, absent Carner's statements, there was insufficient evidence that Carner and Payne were members of a conspiracy.
 
 
 3
 "A statement is not hearsay if ... [t]he statement is offered against a party and is ... a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). Before statements of coconspirators can be admitted, the government must establish by a preponderance of the evidence that a conspiracy existed and that the defendant was a member. See United States v. Leavis, 853 F.2d 215, 219 (4th Cir. 1988). In Bourjaily v. United States, 483 U.S. 171 (1987), the Court held that the trial court could consider the coconspirator statements sought to be admitted in determining whether Rule 801(d)(2)(E)'s requirements were met. In the instant case, the district court admitted the statements of Carner, subject to an instruction to the jury that in determining whether Payne was a member of the conspiracy the jury should consider only the evidence pertaining to his own acts and statements. We are of opinion this instruction did not mean, as the defendant contends, that the jury could not consider the admitted coconspirators statements in determining whether Payne was a member of the conspiracy. While it is true that only the defendant's own words and acts show whether he joined the conspiracy, statements by coconspirators can be considered in determining what the defendant said and did. United States v. Martinez de Ortiz, 907 F.2d 629, 634 (7th Cir. 1990) (en banc). If the instruction was meant as the defendant contends, then the defendant received a more favorable instruction then was required. Once the trial court determined that the coconspirator statements were admissible, the jury could consider those statements in determining whether the conspiracy existed and whether the defendant joined the conspiracy.
 
 
 4
 There was sufficient evidence to establish the existence of a conspiracy. The evidence produced at trial without Carner's statements established the following facts. In Spring 1985, Payne sold to Terry Lee Jones three pounds of marijuana on one occasion and five pounds at another time. Payne then began supplying Jones with cocaine. In late 1986 or early 1987, Payne quit supplying Jones after Jones told him that he "had been busted on coke charges," perhaps for that reason. In April of 1989, Jones and Payne resumed their dealings with each other. However, now Jones supplied Payne with drugs. Jones sold cocaine to Payne that Jones had received from Loxley Walters. Payne did not buy any cocaine at their first meeting in April of 1989 because Payne said that he had just received a kilo and didn't need any from Jones at that time. Payne later purchased a kilo from Jones. In the second week of June of 1989, Payne bought another kilo from Jones. A third kilo sale from Jones to Payne occurred in late June of 1989. A fourth sale of a kilogram of cocaine occurred soon after the Fourth of July. In the latter part of July, Payne asked for another kilo from Jones. The sale never occurred because Jones was arrested on August 1, 1989.
 
 
 5
 On March 18, 1988, a government agent and a confidential informant participated in a purchase of 1/4 ounce of cocaine from Ricky Crouch. In addition, they witnessed Crouch's sale of 1/4 ounce of cocaine to Jeff Carner. Then, on four separate occasions from October 1989 through January 1990, government agents observed and participated in four different sales of cocaine from Mike Carner. Payne drove Mike Carner to each of these transactions. On the first occasion, after Carner was paid, he went to the red pickup truck driven by Payne and then returned to the agent and confidential informant and gave them the cocaine. On the occasion of the third transaction, Carner's wife drove him to the meeting with the agent and confidential informant. Then Carner's wife drove him to meet with Payne. Payne then drove Carner to the place where the drug deal took place. At the fourth deal, Payne observed the transaction from a nearby pay phone. He did not dial any number, but held the phone to his ear. The respective amounts sold in the deals were 1 ounce, 1 ounce, 1 ounce, and 1/2 ounce. Finally, just eight days after he was indicted, Payne changed the license plates on the vehicle which he had used to transport Carner to the drug transactions.
 
 
 6
 Even without Carner's statements there probably was sufficient evidence to establish that a conspiracy existed and that Carner and Payne were members. In addition, in determining admissibility, the court was free to consider the statements by Carner. At the first transaction, Carner stated to the government agent that he would have to take the money back to his supplier before he could give him the cocaine. He then indicated that his supplier was in the red pickup truck that Payne was driving. This is evidence which tends to explain why Payne was at each transaction. It explains Payne's acts and with the other evidence sufficiently establishes that he was a member of the conspiracy. Therefore, the statements made by Carner were properly admitted. As Payne has conceded, with the admission of those statements there was sufficient evidence to sustain the jury's verdicts on the four substantive distribution counts.
 
 
 7
 Payne asserts that the government did not prove one conspiracy. The government alleged one continuous conspiracy dating from Spring 1985 until February 5, 1990, involving Payne, Mike Carner, Jeffrey A. Carner, Ricky Crouch, and Terry Lee Jones. Payne argues that the evidence showed at least two and possibly as many as four different conspiracies. He argues that there were two conspiracies involving Jones-one from Spring 1985 through December 1986 when Payne was supplying Jones and another from April through July 1989 when Jones was supplying Payne. He also argues that there were two conspiracies involving Mike Carner because of the thirteen month gap between Carner's December 1988 and January 1990 sales to the government agent.
 
 
 8
 "[T]he question whether the evidence shows a single or multiple conspiracies is for the jury." United States v. Urbanik, 801 F.2d 692, 695 (4th Cir. 1986). "[T]he finding of a single conspiracy must stand unless the evidence, taken in the light most favorable to the government, would not allow a reasonable jury so to find." 801 F.2d at 695.
 
 
 9
 "A single conspiracy exists where there is 'one overall agreement' or 'one general business venture.' " United States v. Leavis, 853 F.2d 215, 218 (4th Cir. 1988). Payne alleges that there is nothing to connect Jones' transactions with Payne to Payne's dealings with Mike Carner. However, Carner knew that other illegal transactions were required to make Payne's dealings with him possible. See United States v. Burman, 584 F.2d 1354, 1356 (4th Cir.), cert. denied, 439 U.S. 1118 (1979) (each defendant "reasonably knew that smuggling and various other illegal transactions were required to make their own dealing possible."). Carner knew that Payne was getting his cocaine from someone. At least on occasion, Jones was that someone.
 
 
 10
 Payne also contends that the early dealings with Jones could not be part of the same conspiracy as the later episodes with Jones because in the early dealings Payne was the seller and in the later Payne was the buyer. We are unpersuaded by this argument. The purpose of the conspiracy was the distribution of drugs. A reversal of roles of members of the conspiracy does not, per se, end one conspiracy and begin another. Payne also points to certain time gaps between transactions as evidence that more than one conspiracy was involved. "A conspiracy, however, is presumed to continue until there is affirmative evidence of abandonment or defeat of its purposes." United States v. Leavis, 853 F.2d at 218. No persuasive evidence was presented to establish abandonment or defeat of the conspiracy's purposes. Payne abated his dealings with Jones when Jones told him he had been busted. Then, after Jones returned to the street, Payne and Jones began to deal again. The lull in drug activity was not an abandonment or defeat of the conspiracy, rather it was just as likely necessitated by a desire by Payne to escape detection.
 
 
 11
 The district court instructed the jury that "proof of several separate conspiracies is not proof of the single, overall conspiracy charged in the indictment unless one of the several conspiracies which is proved is the single conspiracy which the indictment charges." The issue of multiple conspiracies properly was put before the jury and the jury decided against Payne.
 
 
 12
 Since we find sufficient evidence to support the jury's conviction on the conspiracy count, we find no merit to Payne's contention that the district court erred in not having a separate trial for what Payne contends were separate conspiracies. The jury found that there was one conspiracy.
 
 
 13
 As is obvious, we are also of opinion there was sufficient evidence to support the verdict of conviction on the four counts, each of which charged a discrete sale or distribution.
 
 
 14
 The district court did not commit reversible error.
 
 The judgment of conviction is accordingly
 
 15
 AFFIRMED.