In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

Nos. 19-3011 & 19-3125

TYLER N. JAXSON,

*Plaintiff-Appellee, Cross-Appellant*,

*v.*

ANDREW SAUL, COMMISSIONER OF SOCIAL SECURITY,

*Defendant-Appellant, Cross-Appellee.*

———————————

Appeals from the United States District Court for the
Northern District of Illinois, Western Division.
No. 17 CV 50090 — **Lisa A. Jensen**, *Magistrate Judge.*

———————————

ARGUED JUNE 5, 2020 — DECIDED JUNE 26, 2020

———————————

Before EASTERBROOK, HAMILTON, and SCUDDER, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* David Daugherty, an administrative law judge hearing disability-benefits applications for the Social Security Administration, supplemented his salary by taking bribes. Eric Conn, who represented many claimants, paid Daugherty $400 per favorable decision; Conn himself received $5,000 or more per case out of the benefits

that Daugherty awarded to Conn's clients. Four physicians, including Frederic Huffnagle, submitted evaluations to support Daugherty's decisions. Daugherty told Conn what kind of evidence he wanted to see. Conn wrote the reports, which one of the physicians would sign without change even if the applicant for benefits failed to appear for examination. Huffnagle's "medical suite" was in Conn's office.

After the scheme came to light, Conn and Daugherty pleaded guilty to several federal felonies. Bradley Adkins, one of the physicians, was convicted by a jury. Huffnagle died before he could be prosecuted. The total cost to the United States of benefits granted by Daugherty exceeds $500 million, and Conn reaped more than $5 million in legal fees. Many details of this scam are recounted in U.S. Senate Committee on Homeland Security and Governmental Affairs, Staff Report, *How Some Legal, Medical, and Judicial Professionals Abused Social Security Disability Programs for the Country's Most Vulnerable: A Case Study of the Conn Law Firm* (Oct. 7, 2013).

The agency's Inspector General formally notified it in 2015 of "reason to believe that fraud was involved in th[e] applications for Social Security benefits" of 1,787 named persons from January 2007 through May 2011. That notice, given under 42 U.S.C. §1320a–8(*l*), set in motion a process for redetermination of the benefits awarded to those persons. Two statutes, one covering disability payments and the other covering supplemental-security income, say that redetermination is mandatory if there is reason to believe that fraud played a role, and they add that in conducting this redetermination the agency "shall disregard any evidence if there is reason to believe that fraud or similar fault was involved in

the providing of such evidence." We put the full text of these statutes in an appendix.

Tyler Jaxson is among the people named by the Inspector General. He applied for both disability and supplemental-security-income benefits in 2009, and the agency deemed his evidence insufficient. He failed to appear for any of the three examinations by specialists retained by the agency. Conn presented Jaxson's request for reconsideration, supported by a report that Huffnagle signed, and asked for a hearing. ALJ Daugherty awarded benefits less than three weeks later, on June 1, 2010. He did not hold a hearing and wrote only a cursory evaluation.

A week after receiving the Inspector General's report, the agency sent Jaxson a letter telling him that it would redetermine his eligibility for benefits. The letter said that the agency "must disregard any evidence from one of the medical providers above [including Huffnagle] when the information was submitted by representative Eric C. Conn or other representatives associated with Mr. Conn's law office." The letter also stated that the agency believes that Jaxson's claim lacks support, after disregarding Huffnagle's report. So the agency told Jaxson that his claim would be sent to an ALJ and that he could submit any new evidence that concerned his medical status on or before June 1, 2010. A hearing was held on April 4, 2016. Jaxson appeared with counsel, testified, and submitted other evidence, but the ALJ rejected his claim for benefits. After the Appeals Council denied his request for review, he filed this suit under 42 U.S.C. §§ 405(g), 1383(c)(3). With the parties' consent, the case was assigned to a magistrate judge. 28 U.S.C. §636(c).

Most suits about Social Security disability benefits contest the ALJ's findings or reasoning. Jaxson's does not. He concedes that the ALJ was right, given the evidence he considered. But he asserts that the ALJ should have considered Huffnagle's report too, and that the ALJ declined to do so only because an internal claims-processing manual and ruling say that an ALJ *cannot* accept evidence that the Inspector General found is likely a product of fraud. See *Hearings, Appeals, and Litigation Law Manual* (HALLEX) §I-1-3-25 (2016); Social Security Ruling (SSR) 16-1p, 81 Fed. Reg. 13,436 (Mar. 14, 2016). Relying on a divided decision of the Sixth Circuit, see *Hicks v. Commissioner*, 909 F.3d 786 (6th Cir. 2018), the district court held that the summary exclusion of Huffnagle's report violated the Due Process Clause of the Fifth Amendment. 2019 U.S. Dist. LEXIS 132766 (N.D. Ill. Aug. 7, 2019). The court remanded to the agency for further proceedings, and the agency appealed. Jaxson filed a cross-appeal that we discuss at the end of this opinion.

It was inappropriate for the district court to start with a constitutional issue. Constitutional adjudication is supposed to be a last resort, after all other grounds have been explored. See, e.g., *New York City Transit Authority v. Beazer*, 440 U.S. 568 (1979). If a statute, or a regulation with the force of law, required the exclusion of this evidence, then a court would need to determine the law's validity. Yet no one contends that any law makes the Inspector General's view conclusive. The statutes in the appendix require the agency to redetermine every case that it finds may have been touched by fraud. But they do not say that this step also requires the exclusion of evidence. They say, instead, that evidence is inadmissible "if there is reason to believe that fraud or similar

fault was involved in the providing of such evidence." Who makes that decision, and how, the statutes leave open.

The letter that Jaxson received told him flatly that the agency "*must* disregard any evidence from one of the medical providers above [including Huffnagle] when the information was submitted by representative Eric C. Conn or other representatives associated with Mr. Conn's law office" (emphasis added). It did not say why. True, the *Manual* and Ruling 16-1p say this, but neither document carries legal force. They tell people how the agency plans to carry out its duties, but they do not affect the legal rights of private parties such as Jaxson. That's why they did not need to be adopted through rulemaking. See 5 U.S.C. §553(b)(A) (excluding "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice" from rulemaking requirements). At oral argument, the Commissioner's lawyer acknowledged that the *Manual* and Ruling 16-1p lack the force of law.

The statutes do not prescribe procedures for redeterminations. The agency offered Jaxson an opportunity to have a hearing before an ALJ, and the hearing—though less formal than judicial trials, see *Richardson v. Perales*, 402 U.S. 389 (1971); *Biestek v. Berryhill*, 139 S. Ct. 1148 (2019)—was adversarial. Jaxson was represented by counsel, as was his right. Even in informal adjudication, certain norms apply. One of these is that the adversaries get to present their positions to the administrative law judge or other hearing officer. Adversarial proceedings are, well, adversarial rather than *ex parte*, with only one side's perspective heard. *Perales* and *Biestek* permit some shortcuts compared with hearings in federal

court, but they do not permit important aspects of the pro-
ceedings to be entirely one-sided.

Some language in the Sixth Circuit's opinion, and some
in the district court's, suggests that the only alternative to
unilateral decision by the agency is a full-fledged eviden-
tiary proceeding to determine whether "there is reason to
believe that fraud or similar fault was involved in the
providing of [Huffnagle's] evidence." Yet that is not how
federal courts conduct their own decisionmaking about evi-
dence. Under Fed. R. Evid. 104(a), a federal judge rules on
the admissibility of evidence without submitting the subject
to the trier of fact. See also *United States v. Martinez de Ortiz*,
907 F.2d 629 (7th Cir. 1990) (en banc). Normal practice is for
one side to offer evidence, the other to object, and the judge
to rule—summarily when the outcome is clear, after argu-
ment when the outcome is not. Motions before trial ("*in
limine*") may be handled on the papers. One side explains
why it deems a particular thing admissible (or not), and the
other responds in writing. A judge often listens to oral
presentations by counsel, but rare is the motion that requires
the taking of other evidence. Indeed, many lawsuits con-
clude on the merits without evidentiary hearings. Only dis-
putes about material issues of fact make hearings or trials
necessary.

To decide whether "there is reason to believe that fraud
or similar fault was involved in the providing of [Huff-
nagle's] evidence" an ALJ needs to hear from both sides. The
agency's lawyer can submit the Inspector General's report
and the Senate's compilation of evidence about how Daugh-
erty, Conn, and Huffnagle conducted their dealings. Jaxson's
lawyer can reply with any available reason to think that

Huffnagle gave an honest medical opinion. Jaxson needs a powerful argument, for under the statute any "reason to believe" that the report is fraudulent requires its exclusion. The ALJ need not find that fraud is more likely than not. If an applicant is disabled, it should be possible to provide other evidence to that effect; excluding one potentially tainted report need not be dispositive, and erring on the side of exclusion, as the statute requires, seems a prudent precaution.

Jaxson may have a hard time persuading an ALJ that there is not even "reason to believe" that Huffnagle's report is fraudulent. But he is entitled to try, and we affirm the district court's decision—though under ordinary norms of administrative law rather than a constitutional command. The agency's decisional process comes within 42 U.S.C. §405(b)(1), which requires a "reasonable notice and opportunity for a hearing", and the word "hearing" means a procedure at which both sides can give their views on potentially dispositive matters.

Jaxson's cross-appeal contends that proceedings on remand must be treated as hearings "on the record" governed by the Administrative Procedure Act. 5 U.S.C. §554(a). The district court deemed this argument forfeited because it had not been adequately developed. That was not an abuse of discretion. What's more, for the reasons we have given, treating a redetermination as one governed by §554 would not do Jaxson any good. Even the most formal procedures, those used by federal judges, do not guarantee evidentiary hearings on disputes about the admissibility of evidence. The APA provides that "[w]hen an agency decision rests on official notice of a material fact not appearing in the evidence in the record, a party is entitled … to an opportunity to show

the contrary." 5 U.S.C. §556(e). We've concluded that this is also part of the procedures ordinarily used in informal adjudication: each side is entitled to be heard. The APA would not add to Jaxson's rights.

AFFIRMED

# Appendix

42 U.S.C. §405(u), which covers disability-insurance benefits, provides:

Redetermination of entitlement.

(1)

(A) The Commissioner of Social Security shall immediately redetermine the entitlement of individuals to monthly insurance benefits under this subchapter if there is reason to believe that fraud or similar fault was involved in the application of the individual for such benefits, unless a United States attorney, or equivalent State prosecutor, with jurisdiction over potential or actual related criminal cases, certifies, in writing, that there is a substantial risk that such action by the Commissioner of Social Security with regard to beneficiaries in a particular investigation would jeopardize the criminal prosecution of a person involved in a suspected fraud.

(B) When redetermining the entitlement, or making an initial determination of entitlement, of an individual under this subchapter, the Commissioner of Social Security shall disregard any evidence if there is reason to believe that fraud or similar fault was involved in the providing of such evidence.

(2) For purposes of paragraph (1), similar fault is involved with respect to a determination if—

(A) an incorrect or incomplete statement that is material to the determination is knowingly made; or

(B) information that is material to the determination is knowingly concealed.

(3) If, after redetermining pursuant to this subsection the entitlement of an individual to monthly insurance benefits, the Commissioner of Social Security determines that there is insufficient evidence to support such entitlement, the Commissioner of Social Security may terminate such entitlement and may treat benefits paid on the basis of such insufficient evidence as overpayments.

42 U.S.C. §1383(e)(7), which covers supplemental-security income, provides:

(A)

(i) The Commissioner of Social Security shall immediately redetermine the eligibility of an individual for benefits under this subchapter if there is reason to believe that fraud or similar fault was involved in the application of the individual for such benefits, unless a United States attorney, or equivalent State prosecutor, with jurisdiction over potential or actual related criminal cases, certifies, in writing, that there is a substantial risk that such action by the Commissioner of Social Security with regard to recipients in a particular investigation would jeopardize the criminal prosecution of a person involved in a suspected fraud.

(ii) When redetermining the eligibility, or making an initial determination of eligibility, of an individual for benefits under this subchapter, the Commissioner of Social Security shall disregard any evidence if there is reason to believe that fraud or similar fault was involved in the providing of such evidence.

(B) For purposes of subparagraph (A), similar fault is involved with respect to a determination if—

(i) an incorrect or incomplete statement that is material to the determination is knowingly made; or

(ii) information that is material to the determination is knowingly concealed.

(C) If, after redetermining the eligibility of an individual for benefits under this subchapter, the Commissioner of Social Security determines that there is insufficient evidence to support such eligibility, the Commissioner of Social Security may terminate such eligibility and may treat benefits paid on the basis of such insufficient evidence as overpayments.